## LATROBE *v.* HULBERT, Executor, etc.*

*(Circuit Court, S. D. Ohio.* ———, 1881.)

1. INTEREST—OHIO—LEGAL RATE—1863 TO 1869—PAYMENTS IN EXCESS.
   In Ohio, from April, 1863, to October 1, 1869, 6 per cent. was the highest rate of interest that could legally be contracted for, and all payments in excess of that rate were to be deemed as payments upon the principal, and judgment could be rendered only for the balance.

2. USURY—ESTOPPEL TO PLEAD—RELEASE OF MORTGAGE SECURITY.
   A loan, secured by mortgage upon the borrower's property, was made in 1863. An usurious rate of interest was contracted for and paid until 1875. At that time, in order to perfect a sale of a portion of the property mortgaged, the mortgagee released his mortgage upon such portion, in consideration of the payment of all interest then due and half of the principal debt. There was no evidence that the arrangement was made in settlement of the previous usury, and the property remaining was more than sufficient to satisfy the balance of the debt. *Held*, that the mortgagor was not estopped to set up the usury.

3. SAME—LEX CONTRACTUS.
   Whether a contract is usurious, is to be determined by the law in force at the time of the making of such contract.

4. USURIOUS CONTRACT—SUBSEQUENT LAW.
   At the time of the execution of the contract, the rate of interest stipulated for therein—8 per cent.—was usurious. Subsequently a law was passed which permitted persons to stipulate for that rate. *Held*, that payments of interest thereafter, made in fulfilment of such previous contract, were usurious.

5. USURY—FICTITIOUS PRINCIPAL.
   Where the interest paid, is in excess of the legal rate upon the amount actually due at the time of payment, it is usurious.

In Equity.

*Lincoln, Stephens & Slattery,* for complainant.

*Durbin Ward* and *Jordan & Bettman,* for respondent.

SWING, D. J. From the pleadings and evidence in this case it appears that on the tenth day of April, 1863, John W. Coleman borrowed of the complainant, John H. B. Latrobe, the sum of $25,000 for a period of five years, at 8 per

*Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati bar.

cent. interest, interest to be paid semi-annually; that on that day he executed and delivered to the complainant his promissory note for $25,000, payable on the first day of May, 1868, and also his 10 promissory notes of $1,000, payable every six months thereafter, being for the interest on the note of $25,000, at the rate of 8 per cent., payable semi-annually, and that to secure the payment of said notes John W. Coleman and Lucinda A. Coleman, his wife, executed and delivered to the complainant the mortgage in the bill described, upon real estate therein described, situate in the city of Cincinnati; that on the first day of July, 1866, the complainant, to accommodate Coleman, released said mortgage as to a part of the premises therein described. It further appears that each of said 10 notes of $1,000 each was paid to complainant by John W. Coleman. It is also stated that, at the request of said Coleman and his executors, the time for the payment of said principal sum was extended from time to time until the first day of August, 1875. From the evidence in the case it appears that at the expiration of the first five years for which the loan was made, the time for its payment was extended by an agreement between the complainant and John W. Coleman for another period of five years, he giving his notes for the interest as upon the original loan; that after that it was extended by agreement between complainant and the executors for a period of one or two years, on the same terms. Upon these points, however, the testimony is not quite clear. It further appears from the evidence that John W. Coleman died in November, A. D. 1868, but whether he paid the first instalment of interest under the extension is not clearly shown. The complainant thinks the notes were given by the executors and paid by them, but I think the weight of the evidence would seem to show that although the interest was paid by the executors, that the notes were given by John W. Coleman. From the evidence it further appears that the property under mortgage was under leases which expired first of May, 1875. Prior to this time the executors had taken steps to sell the property,

and on the fourteenth day of June, 1875, a considerable portion of the property was sold. On the nineteenth day of June, 1875, it seems, from a correspondence between the parties, a negotiation commenced in regard to the release by the complainant of his mortgage upon a part or all of the premises mortgaged, upon his receiving a certain portion of his debt, and notes of the purchasers of the property for the balance. The correspondence upon this question embraced several propositions, but finally ending in an agreement between the parties that complainant, upon the payment to him of $12,500 of the principal of his debt and of the interest due, would release his mortgage, so far as it related to the property sold. This agreement was consummated on the first day of August, 1875, when complainant received from the executors the sum of $15,000,—$2,500 of which was the interest due at that date and $12,500 upon the principal debt,— and released the mortgage upon the portion of the property which had been sold, amounting to $18,627.03. Some correspondence passed between the parties after this date, but nothing seems to have been done in regard to the balance of the claim until the bringing of this suit.

Upon the filing of the bill the defendants answer, in substance admitting the execution of the note and mortgage as alleged in the bill, but alleging that there had been paid upon it up to August 1, 1875, 8 per cent. interest, when by law complainant was entitled to but 6 per cent.; that they are entitled to have the 2 per cent. credited upon the principal, which reduces the amount due complainants to $4,198.58, with interest from first of August, 1875.

By the statutes of Ohio at the time of the execution of the note and mortgage in this case, to-wit, on the tenth day of April, 1863, 6 per cent. was the legal rate of interest, nor could the parties make a legal contract for interest beyond that rate; and all payments of interest made beyond that rate were to be taken as payments made on account of the principal, and the courts were forbidden to render judgment for a greater sum than the balance due after deducting the

excess of interest so paid. By the act of May, 1869, it was provided that "the parties to a bond, bill, promissory note, or other instrument of writing, for the forbearance or payment of money at any future time, may stipulate therein for the payment of interest upon the amount thereof at any rate not exceeding 8 per cent. per annum, payable annually." This act took effect and was in force on and after the first day of October, 1869. Prior to the taking effect of this act, therefore, the parties could not legally contract for and receive a greater rate of interest than 6 per cent. Having contracted for and received 8 per cent., the excess of 2 per cent. must be deemed and taken as payment made upon the principal, unless the parties, by their subsequent acts, have deprived themselves of, or have waived, the right to insist upon such application of the excess so paid. And it is claimed by the complainants that the agreement and arrangement of the first of August, 1875, had this effect; that by this contract there was a full and complete settlement of all interest which had been paid, and an ascertainment of the amount due up to that date, and the payment thereof, and a payment of the sum of $12,500 of the principal debt, upon the consideration that complainant would release a portion of his security, and that was done; and that this was the making of a new contract, which shuts out and precludes the defence of usury which before that time had existed. The defendants insist that the agreement and arrangement of the first of August did not have the effect claimed for it by the complainant; and, if it should be held by the court to have such an effect, that the executors had no authority in law to make it.

This leads us to inquire into the nature and character of the transaction of August 1, 1875. Was it a settlement and payment of the excessive interest which before that time had been paid and agreed to be paid? And was the release of a portion of the mortgage premises made in consideration of such settlement and payment?

I have looked through the testimony carefully, and I think I may safely say that prior to that date no question had arisen

between the parties as to whether the rate of interest paid or agreed to be paid was legal or in excess of that allowed by the law. It had not been discussed, and certainly such a question was not discussed upon that day. The only question had been and was, as to the amount of the proceeds of the sale the complainant should receive upon his releasing the property sold,—the complainant desiring to receive the full amount of the proceeds of the sale, and the executors desiring to retain an amount for costs and expenses; and the parties finally agreed that the complainant, upon receiving $2,500, the interest then due, and $12,500 upon the principal, should release the property sold. Nothing was said then or during the entire negotiation that the release was in consideration of a settlement and adjustment of the illegal interest which had been paid or was then being paid. I think, therefore, as a question of fact, that the release was not made upon the consideration of a settlement and adjustment of the excess of interest before and at the time paid.

This being so, there is nothing in the agreement itself which gives it the legal effect of estopping the defendants from setting up the usury in this case; and the remaining property covered by complainant's mortgage, not being injured by that released, and being amply sufficient for the payment of the balance due complainant, equity does not require that it should be so construed.

It is claimed, however, by complainant's counsel, that admitting the arrangement of August, 1875, did not estop the defendants from setting up usury, that as to all payments of interest subsequent to the first day of October, 1869, they cannot be held to be usurious; for, by the law then in force, parties were authorized to contract for the payment of 8 per cent. interest, and, having paid what they might have contracted for, such payments are not usurious.

If my view of the testimony be correct, that the contract for the extension of five years was made with John W. Coleman, it was made before the law of 1869 was passed, and the contract itself was usurious. The subsequent payments of

interest were therefore payments under and in discharge of a contract which was, under the law when entered into, an usurious contract. The law of 1869 did not legalize usurious contracts; it only permitted parties after its passage to make contracts which before that time were usurious; and it is a well-settled principle of law that whether a contract is usurious must be determined by the law in force at the time of its execution. In both the case of *Samyn* v. *Phillips*, 15 Ohio St. 218, and that of *Mueller* v. *McGregor*, 28 Ohio St. 265, the original contracts under which the interest was paid were under the 10 per cent. law, and the payment of the interest subsequent to the time limited by the contracts was a payment of that which, if the original contract had continued, would have been the legal rate of interest. I think, therefore, that the doctrine of these cases cannot apply to the present case, and that the payment of 8 per cent. was in fulfilment of a contract usurious when made, and must be held to continue so even after the passage of the act of 1869.

But, aside from this, the rate of interest which was paid was greater than 8 per cent. upon the amount which was legally due at the time of its payment; and this latter view applies to any interest paid by the executors after the expiration of the term of five years extended by the agreement of J. W. Coleman. These views render unnecessary any examination of the question as to the power of the executors under this will.

It follows, from the conclusions arrived at, that all payments of interest involved usury, and that the excess above 6 per cent. must be applied as payments upon the principal debt, and a decree entered for the payment of the balance found due.