474 P.2d 51

**AMERICAN SAVINGS LIFE INSURANCE COMPANY, an Arizona corporation, Appellant,**

v.

**FINANCIAL AFFAIRS MANAGEMENT CO., Inc., an Arizona corporation, George E. Gaylord and Virginia E. Gaylord, husband and wife, Harold G. Brown and Florence E. Brown, husband and wife, William J. Lowes and Cecile C. Lowes, husband and wife, and Kenneth Biaett, Trustee, Appellees.**

No. 1 CA–CIV 1167.

Court of Appeals of Arizona, Division 1, Department B. Sept. 8, 1970.

**45**

Standage, Allen & Phelps, by Gove L. Allen, Mesa, for appellant.

Biaett & Bahde, by Kenneth Biaett, Phoenix, for appellees.

HAIRE, Judge.

On this appeal from an order granting defendant-appellees' motion for a new trial, the primary question raised by the appellant, American Savings Life Insurance Company, requires that this Court consider the evidence and the instructions to the jury concerning a usury defense raised by the defendant-appellees.

In the trial court American Savings filed an action to collect the balance due on a $220,000.00 promissory note and also sought to foreclose a real property mortgage and a stock pledge held as security for the obligation. Parties-defendant included the maker of the note (Financial

Affairs Management Co., Inc.), three guarantors (Brown, Gaylord and Lowes) and a trustee for the holders of a second mortgage on the real property (Biaett). There were many other defendants, including the owners of the mortgaged real property at the time of trial, referred to herein as the Schmidt-Lindauer group. The Schmidt-Lindauer group did not actively participate in the trial and are not parties to this appeal.

In the trial court all of the appellees, that is, the maker of the note, the three guarantors and the second mortgagee, urged usury as an affirmative defense and sought to have all payments (whether payments of principal or interest and by whomever made) applied in reduction of the principal balance due plaintiff so as to enforce the usury penalty of forfeiture of interest. A.R.S. § 44–1203.

In a pretrial stipulation the parties agreed that the total amount paid on the note, including principal and interest, was $60,118.-40, and that of this amount, appellee Financial Affairs Management Co., Inc. (FAMCO) had paid $9,100.00 and the Schmidt-Lindauer group had paid $51,018.-40.[1] Absent any usury, the agreed balance due plaintiff was "$169,508.00 with interest thereon at 3% per annum from June 15, 1965, until paid."

The claimed usury was not apparent upon the face of the note, but rather was based upon a contemporaneous collateral transaction whereby American Savings, the plaintiff, sold to the defendant-maker of the note, FAMCO, 48,888 shares of plaintiff's stock at $2.25 per share. In essence, in exchange for FAMCO's $220,000.00 promissory note, FAMCO received $110,-000.00 in cash, and stock valued by the parties at $110,000.00. The claimed usury arises out of the alleged gross overvaluation of the stock allegedly for the specific purpose of evading the usury laws. The

1. There is some indication in the record that appellee FAMCO actually paid only $3,300.00 and that therefore the Schmidt-Lindauer group paid $56,818.40, but in view of the disposition we make of this case, this inconsistency becomes immaterial.

trial court correctly instructed the jury as to the intent and other elements necessary to justify a finding of usury under the factual circumstances of this case. Without going into further evidentiary details of the circumstances of the transaction, suffice it to say that on this appeal there is no contention that the trial court was not justified in submitting the usury defense to the jury for its determination.[2]

The jury returned a general verdict finding " * * * for the plaintiff in the sum of $180,000.00". Inasmuch as this sum is over $7,000.00 less than the balance of principal and interest which admittedly would have been due plaintiff, but for the defense of usury, it is apparent that the jury found that plaintiff was guilty of usury. In fact this implied finding by the jury is tacitly conceded by the plaintiff in its opening brief.

After the jury returned its verdict, the defendant-appellees timely moved to amend the verdict by reducing the same, or, in the alternative, for a new trial. The statutory grounds stated in defendant's motion were as follows:

"1.) The verdict is excessive;

"2.) The verdict was a result of an error of law on the part of the jury; and

"3.) The verdict was not justified by the evidence and is contrary to law."

These statutory grounds were expanded and explained in defendants' motion so that it was clear that defendants' primary argument was that, contrary to the law, the evidence and the instructions, the jury had failed to subtract *all payments* made ($60,118.40) in arriving at its verdict.

The Court recognizes that if the jury found usury because of the overvaluation of the stock, then, the beginning principal balance would no longer be $220,000.00. Inherent in the finding of usury by the jury would be the conclusion that the orig-

inally stated principal balance of $220,000.00 included not only principal, but also disguised interest. In arriving at the new beginning principal balance, this disguised interest would, of necessity, have to be eliminated. In order to accomplish this, the jury would have to find the actual value of the stock at the time of the transaction and add that amount to the actual cash loaned by plaintiff, $110,000.00. The sum thus obtained would be the actual beginning principal balance. The appellant and the appellees agree that the jury verdict is mathematically indefensible if the law requires that the total payments made ($60.118.40) be subtracted from the beginning principal balance (whatever it might be).

The grounds stated by the court in its order granting the new trial were as follows:

"(1) The Court erred in its form of verdict to the jury;

"(2) The jury failed to follow the law as instructed by the Court by not allowing all payments heretofore made in the matter to be offset;"

* * * * * *

The second ground stated by the court is essentially an adoption of the defendant-appellees' contention that the court's instructions as applied to the stipulated facts required the jury, once it found that usury was involved, to subtract *all payments* ($60,118.90) in arriving at the balance due plaintiff.

As previously mentioned, the Schmidt-Lindauer group were grantees from FAMCO and took the real property subject to the mortgage, although they did not assume it. Thereafter they made substantial payments to plaintiff on the indebtedness. Plaintiff urges that these payments made by the Schmidt-Lindauer group need not be subtracted from the principal balance because they were purged of usury by reason of an agreement entered into be-

2. A.R.S. § 10-177, which under certain circumstances permits interest not exceed-

ing 1½% per month, was not applicable under the facts of this case.

tween plaintiff and the Schmidt-Lindauer group. This agreement provided for a change in the installment payment and release provisions of the mortgage, and also contained a provision that the Schmidt-Lindauer group agreed that no defenses, counterclaims or offsets existed against the foreclosure of the mortgage.

This Court knows of no authority which would support a theory that certain payments, as opposed to the entire indebtedness, may be purged of usury. Further, even assuming that such "payments" could be purged of usury, the principal amount of such payments (excluding interest) would still have to be subtracted from the indebtedness in arriving at the amount due plaintiff. However, we need not consider whether or not the above-mentioned contractual provision would have purged either the "payments" or the entire indebtedness of the taint of usury insofar as concerns the Schmidt-Lindauer group. The question before the Court is not whether the defense of usury is available to the Schmidt-Lindauer group, but rather whether it is available to the original maker of the note and the three guarantors. These parties will be personally liable on any judgment rendered and also personally liable for any deficiency remaining unpaid after sale of the real property and pledged shares of corporate stock. While defendant FAMCO has sold to the Schmidt-Lindauer group the real property mortgaged as security for the promissory note, it is still the owner of the 48,888 shares of corporate stock pledged to secure said note and therefore also has a direct interest in the amount established as a lien against these shares of stock.

The general rule is set forth in 91 C.J.S. Usury § 72, at 649 (1955) as follows:

" * * * The defense of usury is personal to the mortgagor, and those in privity with him, * * *. A mortgagor may interpose the defense of usury in an action to foreclose the mortgage if he is a party thereto and liable for a deficiency judgment, notwithstanding he

has conveyed his mortgaged premises to another, * * *" (Footnotes omitted).

Also, the general rule as to guarantors is found in 91 C.J.S. Usury § 132b, at 727 (1955) which provides:

"As a general rule a guarantor may take advantage of usury in the debt guaranteed. * * *" (Footnote omitted).

■ Since the defendant-guarantors would be personally liable on any judgment rendered and since FAMCO is still the owner of the 48,888 shares of stock pledged to secure the loan, both the guarantors and FAMCO still have a definite and substantial interest in the amount of the judgment to be rendered against them. Under these facts, their right to urge the defense of usury is not in any way dependent upon the rights of the Schmidt-Lindauer group.

■ Nor do we find any evidence which would justify a finding that the defendant-appellees themselves have entered into any transaction which would purge the original indebtedness of its usurious taint.

"In general it may be said that a usurious obligation may be purged of its taint by a subsequent agreement based on a *new or independent* consideration. Any transaction between a debtor and creditor which results in cancellation or settlement of a usurious debt purges the debt of usury. * * * If the tainted obligation is with the full knowledge and consent of the borrower, finally cancelled or abandoned, and a new obligation * * * is executed * * * such new obligation is valid and enforceable." (91 C.J.S. Usury § 78a, at 654 (1955)). (Emphasis supplied). (Footnotes omitted).

Here the plaintiff is suing upon its original note, mortgage and pledge agreement. The plaintiff does not contend and offered no evidence to establish that the original obligation was cancelled, settled or abandoned, or that a new obligation was created under a new or independent consideration. Both FAMCO and the Schmidt-Lindauer group did enter into subsequent agree-

ments with plaintiff (Exhibits 5 and 6) changing the terms of the promissory note relating to the installment payments and also changing the provisions of the real property mortgage relating to releases. However, according to a provision in each of these agreements, they were to be, and in fact were, rendered null and void by the failure of the makers to pay the installments called for therein. Plaintiff is not suing under either of these agreements. In its complaint the plaintiff properly reverted to its original promissory note, realty mortgage and pledge agreement and brought its suit thereon.

The trial court apparently concluded as a matter of law that these subsequent agreements could not, as against the defendant-appellees, have the effect of purging the original transaction of its usurious taint, and so instructed the jury:

"You are instructed that the subsequent, or later agreements, entered into between the plaintiff and the defendant FAMCO and the defendant Schmidt, in evidence as Exhibits 5 and 6, do not, as a matter of law, purge the original transaction of its taint of usury."

Plaintiff urges in its brief that this instruction merely left it to the jury to determine, *as a matter of fact,* whether these agreements purged the original transaction of its usurious taint. We do not so read the quoted instruction. In any event, we hold that Exhibits 5 and 6 could not have the legal effect of purging the indebtedness of the taint of usury found by the jury, and that the evidence was insufficient to support any conclusion that the original indebtedness (assuming usury in the inception had been purged of its usurious taint. Considering the instructions as a whole, we believe that the above-quoted instruction was a direction to the jury that, if the jury found the original transaction usurious, then it remained usurious and had not been purged of its usurious taint by these subsequent agreements.

It is evident that the jury found usury in the original transaction. Having found such usury, it is equally evident that the jury failed to follow the law as instructed and did not deduct *all payments* in arriving at the balance due plaintiff on the obligation. This contention was urged by defendants as one of the grounds in its motion for new trial, and was specifically set forth as one of the grounds supporting the trial court's order granting a new trial. We find that the trial court was justified in granting a new trial on that basis. Therefore, it is not necessary for us to consider the substantive and procedural questions raised by the parties in regard to the order grounds stated in the order. Heaton v. Waters, 8 Ariz.App. 256, 445 P. 2d 458 (1968).

The defendant Biaett, trustee, as the holder of the second mortgage, may or may not have had the right to set up the defense of usury in his own right if the maker and guarantors had not done so. Our research discloses that there is a split of authority on this question. See 1 G. Glenn, Mortgages § 39.2, at 252 (1943); 91 C.J.S. Usury § 131b, at 724 (1955). However, this question is not directly involved in this action because the maker and guarantors have pleaded usury. The fact that this defense urged by the original maker and guarantors may result in an indirect benefit to the junior lienholder by decreasing the amount of the prior lien on the encumbered property is immaterial. The plaintiff has cited no authority for its contention that the maker and guarantors may not properly raise the defense of usury under such circumstances, nor is any authority cited which would bar the indirect benefit to the second lienholder.

The order granting the defendant appellees a new trial is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.