513 P.2d 1362

AMERICAN SAVINGS LIFE INSURANCE
COMPANY, an Arizona corporation,
Appellant,

v.

FINANCIAL AFFAIRS MANAGEMENT
CO., INC., an Arizona corporation; George
E. Gaylord and Jane Doe Gaylord, husband
and wife; Harold G. Brown and Jane Doe
Brown, husband and wife; William J.
Lowes and Cecile C. Lowes, husband and
wife; Kenneth Biaett, Trustee; Thayer
C. Lindauer, Trustee; Carl K. Schmidt,
Jr. and Elizabeth R. Schmidt, husband and
wife; Thayer C. Lindauer; Thayer Crane
Lindauer; George A. Engelthaler; James
A. Loar and Phyllis J. Loar, husband and
wife; Carl K. Schmidt III; Carolyn Val
Schmidt; Cleo Lorraine Lindauer; Vic-
toria Elizabeth Schmidt; Frederick Hall
Schmidt, Appellees.

No. I CA–CIV. 1785.

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 20, 1973.

Rehearing Denied Oct. 22, 1973.

Review Denied Nov. 13, 1973.

Snell & Wilmer, by Mark Wilmer, Phoe-
nix, and Standage & Allen, by Gove L. Al-
len, Mesa, for appellant.

Biaett & Bahde, by Kenneth Biaett, and
Lindauer & Goldberg, P. A., by Thayer C.
Lindauer, Phoenix, for appellees.

OPINION

HAIRE, Judge.

On this appeal the appellant lender
(American Savings Life Insurance Compa-
ny) raises several issues as possible
grounds for reversal of the trial court's
judgment finding the subject loan transac-

tion usurious. A primary issue is whether a loan agreement, usurious when made, can be enforced according to its original terms when a subsequent statutory amendment authorizes the originally contracted-for interest rate. We hold that on the facts here presented, it can. In reaching this decision we find that even if the subject loan could have been considered usurious under the prior statute, it was not usurious under the subsequent amendment.

The facts pertinent to this question, and a subsidiary question pertaining to the actual rate of return involved, are set forth below. A more complete statement of the facts and the parties in this litigation can be found in a prior opinion rendered by this Court on the first appeal of this matter, American Savings Life Insurance Co. v. Financial Affairs Management Co., Inc., 13 Ariz.App. 44, 474 P.2d 51 (1970).

In the trial court the plaintiff lender filed an action to collect the principal and interest due on a $220,000 promissory note, and also sought to foreclose a real property mortgage and a stock pledge held as security for the obligation. The defendant borrower, Financial Affairs Management Company, Inc. pleaded usury as an affirmative defense, and pursuant to A.R.S. § 44–1203 sought to have all payments paid by it, whether of principal or interest, applied to reduce the principal balance due the lender.

At the time of the original transaction, A.R.S. § 44–1202 (discussed hereinafter in more detail) allowed a maximum rate of interest of 8% per annum. Since the $220,000 promissory note provided for interest at the rate of 3% per annum until the first $110,000 of principal was paid, and interest at the rate of 6% thereafter, the claimed usury was not apparent from the face of the note. The borrower based its claim of usury upon a contemporaneous collateral transaction whereby the borrower was required to buy from the lender 48,888 shares of the lender's stock at $2.25 per share, as a condition to receiving a loan of $110,000. In essence, in exchange for its $220,000 promissory note, the borrower received $110,000 in cash, and stock valued by the parties at $110,000. The alleged inflated sales price of the stock that the borrower was required to buy gave rise to the subsequent claim of usury.

Evidence relating to the actual value of the stock at the time of sale was introduced at trial, and the jury found the actual value to be $1.35 per share. As a result of this finding, the trial judge determined that the difference between the actual value of the stock at the time of the loan transaction ($65,998.80) and the sales price ($110,000) was $44,001.20). This sum, when added to the interest provided for on the face of the promissory note, created an effective rate of return in excess of 8%. He therefore concluded that the loan was usurious. In determining the proper judgment to be entered, the trial judge adjusted the stated principal balance of $220,000 by deducting the difference between the sales price of the stock and its actual value as determined by the jury, to produce a new beginning principal balance of $175,998.80. From this new balance the trial court deducted all loan payments made by the borrower, whether of principal or interest, which, combined with certain other adjustments not here relevant, resulted in a final principal balance due to lender of $113,265.82. Judgment was then entered in favor of the lender in that amount, coupled with a requirement that the lender bid the sum of $95,000 on the foreclosure sale of the 48,888 shares of pledged stock pursuant to a separate agreement entered into between the lender and certain grantees of the borrower.

In December of 1963, when the loan agreement was executed, A.R.S. § 44–1202 called for the penalty of forfeiture of all interest if the loan agreement contemplated interest in excess of 8%. However, prior to the time of the second trial of this matter, this statute had been amended so as to

allow a maximum interest rate of 10%.[1] As we have previously indicated, one of the principal issues raised on appeal is the lender's contention that this amended statute allowing 10% interest is applicable here, rather than the prior 8% statute. With this in mind, the lender contends that, accepting the jury's valuation of $1.35 per share, the effective rate of return was less than 10%. On the other hand, the borrower contends that, again accepting the jury's valuation, the rate was in excess of 10%, and therefore in violation of the 10% statute, even if it could be considered applicable. In view of these conflicting contentions, it is necessary for the Court to determine the rate of return involved, assuming for this purpose the correctness of the stock valuation made by the jury, and further assuming that the alleged over-valuation by the lender was with the intent of securing a greater return for the loan than allowed by law.

While the trial court did not expressly determine the exact rate of return involved, there are sufficient facts in the record from which it can be computed. Assuming the correctness of the jury's findings that the stock had an actual value of $1.35 per share at the date of sale, the parties agree that the principal amount of the loan as adjusted would be $175,998.80. The total "interest" would then be $80,890.-17. By the terms of the promissory note the loan was to be paid off in 103 monthly payments of $2,475 plus one month's payment of a lesser amount to cover the then remaining balance. The lender's Exhibit No. 35 is a detailed pay-out schedule which conclusively establishes that the application of a 9.31% interest rate will completely amortize $175,998.80 of principal and $80,890.17 of interest by means of 103 monthly payments of $2,475 plus one additional month's payment of $2,008.70. This result is reached by applying the monthly payment first against accrued interest and the remainder against principal, as is required by the terms of the promissory note. *See* Community Savings and Loan Association v. Fisher, 409 S.W.2d 546 (Tex. 1966). Since the rate of return or "interest" rate was 9.31%, the loan could not be considered usurious under the statute in force at the time of the second trial of this matter.

We now proceed to the issue of whether the loan agreement, assuming that it was in fact usurious when made, could be enforced according to its original terms in view of the subsequent statutory amendment allowing an increased interest rate. As an initial matter, the borrower contends that our opinion in the first appeal, American Savings Life Insurance Co. v. Financial Affairs Management Co., Inc., *supra*, precludes the consideration of this issue at the second trial. A careful reading of our prior opinion shows that this contention cannot be sustained. In the previous appeal, the issue before us was the propriety of the trial court's order granting a new trial in view of an obvious jury failure to apply the law as instructed by the court. The issue of the applicability of the amended statute was not involved. In fact this Court had serious doubts that the evidence was sufficient to justify the submission of the usury defense to the jury even under the old statute, and for this reason stated:

"Without going into further evidentiary details of the circumstances of the transaction, suffice it to say that *on this appeal there is no contention that the trial court was not justified in submitting the usury defense to the jury for its determination.*" 13 Ariz.App. 44 at 46, 474 P.2d at 53 (Footnote omitted; emphasis added).

---

1. A.R.S. § 44–1202, as amended, reads as follows:

"No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods, or things in action, than ten dollars on one hundred dollars for one year. Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest."

We hold that our prior opinion did not limit the trial court's power to consider the effect of the amended statute at the retrial of this matter.

Turning now to the question of the applicability of the new statute, since there are no Arizona decisions which deal with this precise question, we have carefully reviewed the decisions from other jurisdictions which have considered analogous questions. The landmark decision in this area is Ewell v. Daggs, 108 U.S. 143, 2 S. Ct. 408, 27 L.Ed. 682 (1883). There, the agreement between the parties called for the payment of interest at the rate of 20% per annum. The statute in force at the time of the making of the contract voided all contracts calling for interest in excess of 12%. Prior to suit an amendment to the Texas Constitution repealed all usury laws. This amendment was not specifically made retrospective. However, the U.S. Supreme Court held that it would be applicable to the contract made before its enactment, reasoning:

"The effect of the usury statute of Texas was to enable the party sued to resist a recovery against him of the interest which he had contracted to pay, and it was, in its nature, a penal statute inflicting upon the lender a loss and forfeiture to that extent. Such has been the general, if not uniform, construction placed upon such statutes. *And it has been quite as generally decided that the repeal of such laws, without a saving clause, operated retrospectively, so as to cut off the defence for the future, even in actions upon contracts previously made.* And such laws, operating with that effect, have been upheld, as against all objections on the ground that they deprived parties of vested rights, or impaired the obligation of contracts. The very point was so decided in the following cases: Curtis v. Leavitt, 15 N.Y. 1; Savings Bank v. Allen, 28 Conn. 97; Welch v. Wadsworth, 30 Conn. 149; Andrews v. Russell, 7 Blackf. 474; Wood v. Kennedy, 19 Ind. 68; Town of Danville v. Pace, 25 Grat. 1; Parmelee v. Lawrence, 48 Ill. 331; Woodruff v. Scruggs, 27 Ark. 26.

"And these decisions rest upon solid ground. Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported *is, that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, as long as it remains in fieri, and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract.* The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur. That principle has been repeatedly announced and acted upon by this court. Read v. Plattsmouth, 107 U.S. 568, 2 S.Ct. 208, 27 L.Ed. 414; and see Lewis v. McElvain, 16 Ohio, 347; Johnson v. Bentley, Ib. 97; Trustees v. McCaughy, 2 Ohio State, 152; Satterlee v. Mathewson, 16 S. & R. 169; S.C. in error; 2 Pet. 380, 7 L.Ed. 458; Watson v. Mercer, 8 Pet. 88, 8 L.Ed. 876." Ewell v. Daggs, 108 U.S. 143 at 150, 151, 2 S. Ct. at 413. (Emphasis added).

See, Petterson v. Berry, 125 F. 902 (9th Cir. 1903); First Ecclesiastical Society v. Loomis, 42 Conn. 570 (1875); Klingensmith v. Reed, 31 Ind. 389 (1869); Highfill v. McMickle, 39 Ind. 270 (1872); Wood v. Kennedy, 19 Ind. 68 (1862); Alston v. American Mortgage Co., 24 Ohio App. 475, 156 N.E. 606 (1926), aff'd 116 Ohio St. 643, 157 N.E. 374 (1927), effectively overruling Latrobe v. Hulbert, 6 F. 209 (C.C. Ohio 1881); Cloone v. Minot Building & Loan Association, 68 N.D. 543, 282 N.W. 441 (1938); Wallace v. Goodlett, 104

Tenn. 670, 58 S.W. 343 (1900); Hardaway v. Lilly, 48 S.W. 712 (Tenn.Ch.App.1898); Smoot v. People's Perpetual Loan & Building Association, 95 Va. 686, 29 S.E. 746 (1898); 45 Am.Jur.2d, Interest and Usury, §§ 10, 13, pp. 23, 26 (1969).

The Supreme Court of Florida has twice ruled that modifications of usury statutes operate to remove any defense existing under the prior statutes. In Coe v. Muller, 74 Fla. 399, 77 So. 88 (1917), the court noted that usury is a statutory defense, not founded on any common law right either legal or equitable, and may be taken away by legislative enactment both as to previous and subsequent contracts; that usury statutes do not affect the obligation to the contract, but pertain only to the remedy by giving the debtor the privilege of avoiding the otherwise existing obligation of his contract. The court further reasoned that a repeal of a usury statute without a savings clause takes away the privilege, even as to contracts previously made, and that this can be done without constitutional objection because the right to avoid the payment of interest on the ground of usury is not founded upon the obligation of the contract and therefore is not a vested right.

A more recent Florida decision, Telservice Co., Inc. v. General Capital Corp., 227 So.2d 667 (Fla.1969) has facts almost parallel to the case here involved. There, suit was brought by the borrower pursuant to the then applicable usury statute to recover the principal and interest paid by it on usurious loans made by the lender. The trial court rendered a decision in favor of the borrower. While an appeal taken by the lender was pending, a new usury statute was enacted which provided that a borrower could recover only interest, not principal, paid on a usurious loan. Although the new usury statute was not expressly made retrospective by the legislature, the court held that it was proper to apply the new statute to the pending case. The subject matter of usurious interest was deemed to be exclusively a statutory matter, and the legislature had full authority to modify or repeal existing provisions. The court stated:

"An action predicated on remedies provided by the usury statutes creates no vested substantive right but only an enforceable penalty. Accordingly such penalty or forfeiture possesses no immunity against statutory repeal or modification and the enactment of legislation to this effect abates such penalty or forfeiture pro tanto even during the pendency of an appeal from a final judgment predicated on such statutory penalties or forfeiture." 227 So.2d 667 at 671.

Similarly, in Iowa Savings & Loan Association v. Heidt, 107 Iowa 297, 77 N.W. 1050 (1899), a statutory change in the usury laws which exempted saving and loan associations was applied to a case pending on appeal when the amendment occurred, even though that meant reversing the trial court's decision which had been based on the prior law. The statutory amendment was regarded as a curative act, with the borrower having no vested rights disturbed by the change, since pleading usury was merely a privilege pertaining solely to the remedy. The court reasoned that the effect of the subsequent legislation was not to change the agreement, but only to remove a bar to its enforcement.

A thorough analysis of the issues involved when a usury statute is repealed or modified is also found in Deposit Guaranty Bank & Trust Co. v. Williams, 193 Miss. 432, 9 So.2d 638 (1942). There the court again noted that an application to prior contracts did not impair the obligations of the contract, but simply withdrew previous impediments and rendered the contract enforceable as made. The court went on to hold that the right of action or defense of usury is statutorily created; that such statutes are regulatory in nature and do not create vested rights; that therefore the statute could be repealed or changed so as to affect a cause of action even in the pending suit. See also Fenton v. Markwell & Co., 11 Cal.App.Supp.2d 755, 52 P.2d 297 (1935); White Motor Co. v. Reynolds,

179 Neb. 91, 136 N.W.2d 437 (1965), holding that under a specific statutory provision the law in force at the time the case was decided controlled; Davis v. General Motors Acceptance Corp., 176 Neb. 865, 127 N.W.2d 907 (1964); *but see* Curtis v. Securities Acceptance Corp., 166 Neb. 815, 91 N.W.2d 19 (1958).

We are cognizant of the fact that some jurisdictions have refused to apply a modification or change in the usury laws to contracts pre-dating the modification. Various grounds for the denial have been used. Such decisions have sometimes been based on the fact that the "old" usury statute made usurious transactions *void*. Pond v. Horne, 65 N.C. 84 (1871); Brannan v. Davis, 5 Tenn.App. 72 (1927). Other courts have held the view that a usury statute created a vested right in the borrower. *See* Williar v. Baltimore Butchers' Loan And Annuity Association, 45 Md. 546 (1877); Gilliland v. Phillips, 1 S.C. 152 (1869); Seegar v. Seegar, 19 Ill. 121 (1857); Jefferson Standard Life Insurance Co. v. Dorsey, 178 Miss. 852, 173 So. 669 (1937); *but see* later Mississippi decision *contra,* Deposit Guaranty Bank & Trust Co. v. Williams, *supra.*

We find the reasoning in those cases allowing the application of the modified statute to defeat the defense of usury more persuasive. In the case here involved, the statute in force at the time the loan was made did not make usurious agreements void. In view of this, it is our opinion that the statute did not invalidate the obligations contracted by the parties, but rather it merely provided a remedy which made the courts unavailable for the enforcement of the contractual obligation for the payment of interest. Viewed in this manner, the statute creates a privilege in the borrower, that privilege being the ability to avoid paying the interest he has previously agreed to pay. The modification of the statute removes the previously existing privilege to the extent of the modification. The privilege ends when that

which creates it ends. It can hardly be contended that a borrower has a vested right in this privilege to avoid obligations he has previously voluntarily assumed. As the United States Supreme Court stated in McNair v. Knott, 302 U.S. 369, 58 S.Ct. 245, 82 L.Ed. 307 (1937):

> "Placing the stamp of legality on a contract voluntarily and fairly entered into by parties for their mutual advantage takes nothing away from either of them. No party who has made an illegal contract has a right to insist that it remain permanently illegal. Public policy cannot be made static by those who, for reasons of their own, make contracts beyond their legal powers. *No person has a vested right to be permitted to evade contracts which he has illegally made.*" 302 U.S. 369 at 373, 58 S.Ct. 245 at 247. (Emphasis added; footnote omitted).

Some courts characterize the position we here take as giving retrospective or retroactive effect to the modified statute.[2] In our opinion this characterization is inaccurate. The remedy or privilege given by the prior statute dies with the prior statute —the new or modified statute acts *"in praesenti"*, applying to presently pending actions which have not proceeded to final judgment. Somewhat analogous reasoning was used by the court in the case of In re Dos Cabezas Power District, 17 Ariz.App. 414, 498 P.2d 488 (1972). There, the county board of supervisors had, after a hearing, granted a petition which sought the formation of a power district, and set the boundaries of the proposed power district. An appeal from the board's decision was taken to the superior court by two public service corporations. While this appeal was pending, the applicable statute was amended so as to prohibit a county board of supervisors from permitting the organization of an electrical or power district if the proposed district included any territory of another district or any territory served by an electrical cooperative or allocated to a public service corporation by a certificate

2. *See* A.R.S. § 1–244.

of convenience and necessity issued by the Corporation Commission. In affirming the superior court's judgment, which held that the amended statute applied to the formation of the proposed power district, the Court of Appeals stated:

"The real issue in this case is this: What happens when a statute is amended while proceedings are going on under the old statute? The general rule is that when proceedings are in process under a statute and have not been completed, and a new act passed, modifying the statute under which the proceedings were begun, the new statute becomes integrated into part of the old statute as fully as if written therein from the very time the old statute was enacted. Oliphant v. Carthage Bank, 224 Miss. 386, 80 So.2d 63 (1955). A statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the modifying statute contains a saving clause. Stone v. Independent Linen Service Co., 212 Miss. 580, 55 So. 2d 165 (1951). Every right or remedy created solely by a modified statute disappears or falls with the modified statute unless carried to final judgment before the repeal or modification, save that no such repeal or modification shall be permitted to impair the obligation of a contract or to abrogate a vested right." 17 Ariz.App. 414, at 420, 498 P.2d 488, at 494.

■ We hold that the trial court should have applied the modified statute. This conclusion is consistent with the following rule adopted by our Supreme Court in Steinfeld v. Nielsen, 15 Ariz. 424, 139 P. 879 (1914):

"'If a statute providing a remedy is repealed while proceedings are pending, such proceedings will be thereby determined, unless the legislature shall otherwise provide, and, if it be amended instead of repealed, the judgment pronounced in such proceedings must be according to the law as it then stands.'" 15 Ariz. 424 at 466, 139 P. 879 at 897.

Since under the modified statute in the case here presented no usury has been shown, we further hold the lender is entitled to the entry of judgment for the full remaining unpaid balance of principal and interest in accordance with the contractual undertaking of the parties.

As a final matter, the lender objects to the trial court's ruling requiring the lender to bid $95,000 at the foreclosure sale of the 48,888 shares of pledged stock, as required by the lender's 1965 agreement with the borrower's grantees. The thrust of lender's argument is that if borrower's grantees are given the indirect benefit of the usury defense, contrary to the intent of the 1965 agreement between the grantees and the lender, it would be unjust not to release the lender from its obligation to bid $95,000 for the stock. Since we have disallowed the defense of usury, there is no longer any basis for the lender's claim of unjustness. Therefore we affirm the trial court's disposition of this issue.

The judgment entered by the trial court is vacated and the matter is remanded for the entry of a modified judgment for the lender consistent with this opinion. In view of this disposition, we do not consider it necessary to discuss other issues raised by the lender concerning the admission and rejection of evidence, and error in the instructions to and the submission of the usury defense to the jury, which in our opinion furnish adequate separate grounds necessitating reversal.

JACOBSON, C. J., Division 1, and EUBANK, P. J., concur.