FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION OF ALBERT
LEA, Appellant,

v.

John W. GUILDNER et al., Respondents,

Pickwick International Inc., Defendant.

John W. GUILDNER et al., Respondents,

Pickwick International Inc., Plaintiff,

v.

FIRST FEDERAL SAVINGS AND LOAN
ASSOCIATION OF ALBERT
LEA, Appellant.

Nos. 49957, 49959.

Supreme Court of Minnesota.

June 13, 1980.

Lindquist & Vennum and Kurtis A. Greenley, Minneapolis, for appellant.

Farrish, Johnson, Maschka, Hottinger, Sheran & Salsbery and John C. Hottinger, Mankato, for respondents.

Mackall Crounse & Moore and Frederick L. Thorson, Minneapolis, amicus curiae, for Savings League of Minnesota.

KELLY, Justice.

John and Mary Guildner brought suit seeking a court determination that a note and mortgage on commercial property given to First Federal Savings and Loan Association of Albert Lea (First Federal) in return for a loan were void for usury. First Federal counterclaimed, stating that by separate action it was going to foreclose on the mortgage, and thereafter filed such a separate action. The two cases were consolidated, and cross-motions for summary judgment were filed on the issues whether First Federal was exempt from the opera-

tion of the usury laws because it was a "mutual building association" under the law in effect when the loan was made, and whether the commercial loan exemption to the usury statutes, enacted after the loan was made, operated retroactively to validate the loan and mortgage, even though they would have been usurious under the law at the time of the transaction. The Freeborn County District Court granted summary judgment for the Guildners on both issues, finding that the transaction was usurious and that First Federal was not exempt from the operation of the usury laws, and ordered judgment canceling the note and mortgage. The court thereafter denied First Federal's motion for amended findings of fact, conclusions of law, and order for judgment. First Federal now appeals the denial of its post-trial motion. We reverse.

The facts of this case are essentially undisputed. On March 11, 1970, the Guildners applied to First Federal for a commercial loan of $33,000 to purchase a building in which to operate their electronics business. In order to have the loan approved, the Guildners were required to put up their residence, as well as the building they proposed to buy, as security. As approved, the $33,000 loan carried a 9½ percent annual interest rate.

With some backtracking, the Guildners kept current on the payments of the loan until May 1, 1974,[1] when they defaulted on a payment. About two months later, on July 8, through their attorney, they informed First Federal in writing that they considered the original loan to be usurious and requested that the mortgage be cancelled and the note be endorsed and delivered back to them. First Federal replied that the loan was valid because it was exempt from the operation of the usury laws under Minn.Stat. § 334.06 (1976) as a "mutual building association." The Guildners, in a letter dated July 26, 1974, reiterated

their position that the mortgage was invalid and that they were not going to make any further payments on the loan.

Three years later, on August 23, 1977, the Guildners brought suit to have the court declare the 1970 note and mortgage void and unenforceable, and to cancel the loan contract as usurious. First Federal counterclaimed, and later brought a separate action, to foreclose on the mortgage given as security for the loan. On cross-motions for summary judgment, the trial court held that the original loan was usurious and that the loan was not exempt from the usury laws. It then ordered judgment for the Guildners, canceling the mortgage and note. Upon denial of its motion for amended findings, First Federal appeals from the trial court order.

It is apparently uncontested by First Federal that the 1970 loan involved in this case carried a usurious interest rate under the usury law as it existed at the time,[2] and that the trial court was correct in declaring the note and mortgage invalid unless the loan falls under one of the exemptions to the usury law. First Federal, however, claims exemption for the loan under either of two statutes: first, First Federal claims that it is a "mutual building association" within the contemplation of Minn.Stat. § 334.06 (1976) (language deleted 1977); and second, First Federal claims that Minn. Stat. § 334.011 (1978), which provides higher maximum interest rates for business loans, operates retroactively to exempt the loan transaction in this case. Since we agree with First Federal that the loan in this case falls under the provisions of section 334.011, we need not consider the issue whether First Federal is a "mutual building association."

Minn.Stat. § 334.011, subd. 1 (1978) provides that "a lender" may, notwithstanding the other provision of the usury law, charge a rate on a "business" loan of not more than

---

1. First Federal offered to restructure the loan to an 8 percent annual interest rate in December 1973, but the Guildners refused.

2. Minn.Stat. § 334.01 (1969) provided that a loan or mortgage was usurious if it carried above an 8 percent interest rate. The loan in this case carried a 9½ percent annual interest rate.

4½ percent higher than the current Federal Reserve discount rate on 90-day commercial paper in the district encompassing Minnesota. Subdivision 3 of that statute provides, "If the rate of interest charged is permitted by this section at the time the loan was made, that rate of interest does not later become usurious because of a fluctuation in the federal discount rate."

The current language of the statute went into effect on May 28, 1977, about seven years after the original loan transaction in this case, about three years after the Guildners had defaulted on the loan and claimed that the loan was usurious, and about three months before the Guildners initiated the current action. The Federal Reserve discount rate on 90-day commercial paper as of the time of the original loan transaction was 6 percent.

First Federal argues that section 334.011 operates retroactively to validate any business loan with up to a 10½ percent interest rate made during the time in question, and thus operates to validate the 9½ percent business loan in this case, basing its contention mainly on the case of *United Realty Trust v. Property Development & Research Co.*, 269 N.W.2d 737 (Minn.1978).

In *United Realty*, we held that Minn.Stat. § 334.01, subd. 2, providing an exemption from the usury laws for loans above $100,-000, operated retroactively to validate an otherwise usurious loan made over that amount prior to the effective date of the statute. We reasoned that usury laws were penal in nature, and that an amendment or repeal of such a usury law, removing the penalty under certain situations, should be presumed retroactive in the absence of a legislative indication to the contrary, so long as retroactive application did not interfere with a "vested right." The court went on to say that " '[i]t can hardly be contended that a borrower has a vested right in this

privilege [created by the usury statute] to avoid obligations he has previously voluntarily assumed.' " Id. (quoting *American Savings Life Insurance Co. v. Financial Affairs Management Co.*, 20 Ariz.App. 479, 484, 513 P.2d 1362, 1367 (1973)). Noting that, under Minnesota law, a contrary ruling would allow a forfeiture both of principal and interest, the court stated that the modern view is against forfeiture and held that "[a] statutory repeal or modification of a usury statute abates the repealed penalty or forfeiture as to all transactions sought to be enforced thereafter, including transactions entered before the repeal." *Id.*

It follows from *United Realty*, therefore, that the loan transaction in the present case has been retroactively validated by legislative enactment. The loan is conceded to have been a "business" loan under section 334.011, and the 9½ percent annual interest rate was not above the rate authorized by the statute—4½ percent above the Federal Reserve discount rate for commercial paper at the time of the transaction (6 percent) or 10½ percent.[3] As in *United Realty*, such a ruling is necessary in this case to prevent a forfeiture. *See, e. g., Trauernicht v. Kingston*, 156 Minn. 442, 445, 195 N.W. 278, 279 (1923) (plaintiff suing for cancellation of usurious loan need not return money actually received). *See also Phalen Park State Bank v. Reeves*, 312 Minn. 194, 200, 251 N.W.2d 135, 139 (1977) ("If the mortgage is usurious, it is void, and the bank has no right to either the interest accrued or the principal.").

The Guildners, however, seek to distinguish *United Realty* on the basis of their having "cancelled" the contract through their letters of July 8 and 26, 1974. There is no evidence that First Federal ever regarded the contract as cancelled. On the contrary, it reserved its rights during this period.

**3.** The holding of *United Realty* was recently applied to section 334.011 in the context of agricultural loans in *Northwestern State Bank of LuVerne v. Gangestad*, 289 N.W.2d 449 (Minn.1979). Since the loan in this case has been made valid under the relevant Federal Reserve discount rate in effect at the time of the initial transaction, *see* Minn.Stat. § 334.011, subd. 3 (1978), we need not address the general problem of whether the loans would also be valid under the discount rate in effect at the time of "enforcement" or when enforcement takes place. *See generally* 289 N.W.2d at 452.

"Cancellation" of the contract in this case would necessarily entail the penalty of forfeiture. The Guildners are thus arguing not only that they had a unilateral right to "cancel" the contract for usury, but also that they could at the same time unilaterally vest in themselves the penalty of forfeiture. The general rule, however, is that "* * * in a penalty there can be no vested right *until it has been reduced to a judgment.* A mere penalty never vests, but remains executory." *Standard Oil Co. (Indiana) v. Williams,* 153 Ind.App. 489, 495, 288 N.E.2d 170, 173 (1972) (emphasis added) (quoting *State ex rel. Thomas v. Youmans,* 5 Ind. 280, 282 (1854)). *Accord, e. g., Deposit Guaranty Bank & Trust Co. v. Williams,* 193 Miss. 432, 438, 9 So.2d 638, 639 (1942) ("[E]very right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute, *unless carried to final judgment* before the repeal or modification * * *."). (Emphasis added).

According to the case law that is consistent with this court's premise of retroactivity in *United Realty,* therefore, the Guildners could not vest themselves with the right to the penalty of forfeiture simply by unilaterally asserting that right, but had to reduce such a right to final judgment before it would vest. Contrary to the Guildners' assertions in their brief, the legislature by implicitly making section 334.011 retroactive, is not "resurrect[ing] a voided contract two years after the contract had been terminated," but is rather disallowing the enforcement of the penalty of forfeiture for usury, before such a forfeiture had been reduced to final judgment. Holding that section 334.011 as applied to business loans is retroactive and that a penalty for usury does not vest until final judgment, is a logical extension of the decision in *United Realty.*

We therefore hold that section 334.011 validated the loan transaction in question under the circumstances of this case. The trial court is accordingly reversed, and the case remanded for further proceedings.

Reversed and remanded.

SHERAN, C. J., and ROGOSHESKE, J., took no part in the consideration or decision of this case.