938 P.2d 819 (1997)
132 Wash.2d 433
Brad CAZZANIGI, Anthony Gonzalez and Tina Gonzalez, husband and wife, individually and on behalf of persons similarly situated, Respondents,
v.
GENERAL ELECTRIC CREDIT CORPORATION, a foreign corporation, a/k/a General Electric Capital Corporation, Appellant.
Nos. 61947-6, 63417-3.
Supreme Court of Washington, En Banc.
Argued March 25, 1997.
Decided June 26, 1997.
*820 Evergreen Legal Services, Robert Scott, Jr., Wenatchee, amicus curiae on behalf of the Washington State Council of Seniors.
Davis, Wright & Tremaine, Stephen Rummage, Stuart Dunwoody, John Zobel, Seattle, Jeffers, Danielson, Sonn & Alyward, James Danielson, Wenatchee, for Appellant.
Davis, Arneil, Dorsey, Kight & Parlette, Robert Parlette, Wenatchee, Jane Shapira, Seattle, Lacy, Kane & Richardson, Inc., P.S., Scott M. Kane, E. Wenatchee, Anthony L. Rafel, Seattle, for Respondents.
MADSEN, Justice.
Plaintiffs claim that financing agreements into which they entered are retail installment contracts which violate the Retail Installment Sales of Goods and Services Act (RISA) under this court's holdings in Zachman v. Whirlpool Acceptance Corp., 120 Wash.2d 304, 841 P.2d 27 (1992). Although numerous issues are raised, we find that two issues are dispositive of Plaintiffs' claims and, accordingly, do not reach the remaining issues. First, we conclude that 1992 legislation deregulating service charges under RISA applies retroactively and disposes of Plaintiffs' claims that excess service charges were imposed under the financing agreements. Second, there is no express or implied private cause of action under RCW 63.14.180 for nonservice charge violations of RISA.
This is a class action brought in January 1993 by retail buyers of consumer goods who financed their purchases through General Electric Credit Corporation (GE Capital) alleging that the financing documents, "private label" credit agreements, violate RISA, RCW 63.14. Plaintiffs also asserted claims based upon common law usury, fraud, unconstitutionality of 1993 amendments to RISA, violation of the Consumer Protection Act (CPA), and breach of contract. Among other things, they sought penalties under RISA, attorney fees and costs, damages, and injunctive and declaratory relief. The original class representatives were Brad Cazzanigi, who purchased goods from Midway Furniture (National Home Furnishings), and Anthony and Tina Gonzalez, who purchased goods from Apple Computer. An additional class representative, Candace Jones (formerly Mielke), who purchased goods from Levitz Furniture, was added when her motion to intervene was granted January 23, 1995. (The order certifying classes was entered October 5, 1995).
In Zachman, this Court held that financing documents involved there, although titled "revolving charge plan agreements," were not, as a matter of law, valid revolving charge agreements. Zachman, 120 Wash.2d 304, 841 P.2d 27. Instead, the agreements were in effect retail installment contracts which violated RISA because they provided for a greater rate of service charge than allowed by statute and their disclosures regarding the cost of credit were legally insufficient. Plaintiffs argue that, like the agreements in Zachman, the agreements in this case are also effectively retail installment contracts which violate RISA.
While the appeal in Zachman was pending, the Legislature deregulated service charges under RISA, eliminating the differential between the maximum interest rates allowed for retail installment contracts, revolving charge accounts, and lender credit cards. Laws of 1992, ch. 193. RCW 63.14.130(1), effective April 2, 1992, now provides that service charges "shall not exceed the dollar amount or rate agreed to by contract and disclosed...."
Zachman was filed in November 1992. The legislative response was almost immediate. Amendments to RISA were passed which were intended to overturn Zachman, Laws of 1993, 1st Sp. Sess., ch. 5. Shortly after this action was brought, GE Capital moved for summary judgment based upon the 1993 amendments. The trial court denied the motion by order dated January 28, 1994. In a letter opinion of the same date, the court reasoned that while the Legislature clearly intended to overturn Zachman, the amendments did not in fact do so. In light of its ruling, the court declined to reach Plaintiffs' constitutional challenges to the 1993 amendments and their argument that the amendments could not be retroactively applied.
*821 The parties then each moved for partial summary judgment as follows: Plaintiffs moved for summary judgment that Zachman controls and GE Capital's private label financing agreements violate RISA. GE Capital sought summary judgment that Plaintiffs had no affirmative cause of action for disclosure violations, but that such violations could be asserted defensively only in an action brought by a creditor. GE Capital also sought summary judgment that to the extent Plaintiffs argued that GE Capital charged excess service charges and sought penalties under RCW 63.14.180, their claims were barred by the six-month time limit of RCW 63.14.152.
In an order dated October 7, 1994, the trial court granted both sides' motions for partial summary judgment. As explained in letter opinions of August 16, 1994, and October 7, 1994, the court ruled favorably to Plaintiffs that the agreements between Plaintiffs and GE Capital were retail installment contracts which violated RISA because the floating interest rate statutorily allowing for retail installment contracts before April 1992 was lower than the 18 percent rate charged in the GE Capital agreements. The court also ruled, however, in GE Capital's favor that RISA allows a private cause of action under RCW 63.14.180 only for penalties for excess service charges and not for disclosure violations. Further, the court held that the six month period in RCW 63.14.152 applied to Cazzanigi's and the Gonzalezes' claims for penalties for excess service charges and therefore, these claims were time barred.
In the August 16, 1994, and the October 7, 1994, letter opinions, the court also rejected GE Capital's argument that it should be excused from any noncompliance with RISA due to a good faith failure to anticipate Zachman, and rejected its argument that RISA claims could not be brought against it because it was not a party to the original contract. The court deferred ruling on GE Capital's argument that it complied with disclosure requirements under the federal Truth in Lending Act, 15 U.S.C. § 1601 and thus it complied with RISA's disclosure requirements pursuant to RCW 63.14.151.
By letter opinions dated November 17, 1994, and January 6, 1995, the trial court ruled that federal law would be used to determine what disclosures are required under the Truth in Lending Act. The court also denied Plaintiffs' motion for summary judgment on their claims under the CPA, RCW 19.86, and held that Plaintiffs Gonzalezes' CPA claims were time-barred. These rulings were embodied in orders dated December 9, 1994, and March 13, 1995.
In the meantime, in June 1994, Candace Jones (formerly Mielke) sought to intervene. She did not file a copy of her proposed complaint with the motion, but instead filed it July 11, 1994. The motion to intervene was granted January 23, 1995.
In early 1995, Jones moved for summary judgment on her claim that GE Capital had collected excess service charges under RISA (as noted, the court earlier ruled that Cazzanigi's and the Gonzalezes' claims based upon excess service charges were time-barred). GE Capital also moved for summary judgment, arguing that 1992 legislation deregulating all service charges under RISA, Laws of 1992, ch. 193, § 1 (RCW 63.14.130), applies to the class members' agreements even if entered into prior to enactment of the legislation. GE Capital further urged that Jones's RISA and CPA claims were time-barred.
In a letter opinion dated April 19, 1995, the trial court concluded among other things that the legislation deregulating service charges applied only from April 2, 1992, the effective date of the legislation, and that the financing agreement Jones entered into was a retail installment contract. Accordingly the trial court granted Jones's motion for summary judgment on her RISA claims based on excess service charges for the period prior to April 2, 1992; therefore, GE Capital was liable for penalties under RCW 63.14.180 with respect to service charges paid by Jones before April 2, 1992. The court rejected GE Capital's argument that Jones's claim under RISA was untimely, reasoning that documents filed with her motion to intervene were sufficient to give notice of her claims and that the failure to file a copy of her proposed complaint with the motion did not *822 render her motion fatally defective. Because Jones's motion was filed within six months of her final payment, her RISA claim based on excessive service charges was timely under RCW 63.14.152. The court also held that Jones's CPA claims were time-barred, and declined to reconsider several issues it had already decided. These rulings were embodied in an order dated October 5, 1995 (Jones order).
In the meantime, the trial court also ruled on a number of issues involving class certification in a letter opinion dated September 6, 1995. An order certifying a class consisting of three subclasses was entered also on October 5, 1995. Both parties sought review of the order certifying class. However, Plaintiffs subsequently agreed with GE Capital's position that it would unduly complicate this already complex proceeding to include review of the class certification at this time, and accordingly withdrew their request for discretionary review of that order. By notation order dated February 23, 1996, the Supreme Court Commissioner deemed the motion for discretionary review of the class certification order and the request for "cross review" of that order withdrawn.
Pursuant to a December 15, 1995, ruling by the Commissioner, the orders of January 28, 1994, October 7, 1994, December 9, 1994, March 13, 1995, and October 5, 1995 (Jones order) are before the court as part of one direct appeal.
Although numerous issues are raised by the parties, two are dispositive.

DISCUSSION

I. 1992 LEGISLATION DEREGULATING SERVICE CHARGES UNDER RISA
Prior to 1992 legislation deregulating service charges under RISA, the act limited the maximum service charges under a retail installment contract to a rate tied to 26-week treasury bill rates. In contrast to that floating rate, the maximum service charge which could be set under a revolving charge agreement or a lender credit card agreement was 18 percent per year. Former RCW 63.14.130. In 1992, the Legislature eliminated the differential in service charges allowable under the financing agreements covered by RISA and provided that the service charge "shall not exceed the schedule or rate agreed to by contract and disclosed under RCW 63.14.120(1)." Laws of 1992, ch. 193, § 1(2); RCW 63.14.130. Each of the agreements at issue here set an 18 percent service charge rate which was disclosed in writing as required by RCW 63.14.120(1).
The trial court held that the 1992 legislation did not apply to service charges paid before its effective date, April 2, 1992, but did apply on and after that date. GE Capital argues that the 1992 deregulation applies retroactively, precluding Plaintiffs' claims based upon excess service charges. GE Capital maintains the 1992 legislation repealed the maximum rates set in RCW 63.14.130, and as a result any contracted-for rate lawful under the new legislation is valid even if the transaction violated the law when entered into. We agree.
An amendatory act "constitutes a repeal of the amended act to the extent the two acts are inconsistent." Seattle-King County Council of Camp Fire v. State, 105 Wash.2d 55, 63, 711 P.2d 300 (1985). Absent a saving clause, "[a] repealing act terminates all rights dependent upon the repealed statute and all proceedings based on it." Seattle Rendering Works, Inc. v. Darling-Delaware Co., 104 Wash.2d 15, 19, 701 P.2d 502 (1985) (citing Lau v. Nelson, 89 Wash.2d 772, 575 P.2d 719, overruled in part on other grounds in Roberts v. Johnson, 91 Wash.2d 182, 588 P.2d 201 (1978)); Hansen v. West Coast Wholesale Drug Co., 47 Wash.2d 825, 289 P.2d 718 (1955). However, repeal of a statute does not destroy vested rights or rights of a common law nature embodied in the repealed statute. Lau, 89 Wash.2d at 774, 575 P.2d 719; Seattle Rendering Works, 104 Wash.2d at 19, 701 P.2d 502. Repealing acts can divest parties of causes of action. See, e.g., Seattle Rendering Works, 104 Wash.2d 15, 701 Pd 502 (repeal of Unfair Practices Act before trial court entered judgment voided judgment as no cause of action for belowcost pricing existed at common law); Hansen v.West Coast Wholesale Drug Co.,47 *823 Wash.2d 825, 289 P.2d 718 (repeal of statute on which plaintiff based cause of action without saving clause during pendency of personal injury and wrongful death action divested plaintiff of right of action where action existed only by virtue of repealed statute).
As to interest rates specifically, "`[t]here is no vested right in a usury law and it may be repealed or changed so as to affect causes of action or defenses in pending suits.'" Sparkman & McLean Co. v. Govan Inv. Trust, 78 Wash.2d 584, 587, 478 P.2d 232 (1970) (quoting White Motor Co. v. Reynolds, 179 Neb. 91, 136 N.W.2d 437, 438 (1965)). Numerous courts have reached the same conclusion. E.g., Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682 (1883); American Sav. Life Ins. Co. v. Financial Affairs Management Co., 20 Ariz.App. 479, 513 P.2d 1362 (1973) (borrower has no vested right to statutory privilege to avoid paying interest the borrower previously agreed to pay); Orden v. Crawshaw Mortgage & Inv. Co., 109 Cal. App.3d 141, 167 Cal.Rptr. 62 (1980) (rule giving retroactivity to statutes repealing usury laws is an application of the well established principle that no person has a vested right in an unenforced statutory penalty or forfeiture); Ward v. Hudco Loan Co., 254 Ga. 294, 328 S.E.2d 729 (1985); Sweeney v. Citicorp Person-to-Person Fin. Ctr., Inc., 157 Ill.App.3d 47, 109 Ill.Dec. 472, 510 N.E.2d 93 (1987) (usury statutes are in derogation of common law and a restriction on freedom to contract; no constitutionally vested right to defense of usury; repeal of law limiting rate of interest merely allows what was the original obligation of the parties to be enforced); L.E. Marlowe & Sons, Ltd v. Farrier, 159 Mich.App. 194, 406 N.W.2d 273 (1987); First Fed Sav. & Loan Ass'n v. Guildner, 295 N.W.2d 501 (Minn.1980) (usury laws are penal in nature; repeal presumed retroactive; no vested right in privilege created by usury statute to avoid voluntarily assumed obligations); Farmland Enter., Inc. v. Schueman, 212 Neb. 342, 322 N.W.2d 665 (1982) (repeal of statutory prohibition against usury releases any penalties imposed and validates the contract; repeal of a statute before a penalty is enforced is not a deprivation of vested rights); Klein v. Wolf Run Resort, Inc., 163 Vt. 506, 659 A.2d 1153 (1995).
Under this state's case law concerning the effect of repealing legislation, and particularly in light of Sparkman, which is consistent with the majority view on the issue, the deregulation of service charges under RISA applies retroactively. There is no vested right in ceilings on the rate of interest; former RCW 63.14.130's ceilings did not reflect common law rights, and deregulation does not affect the underlying contractual obligations.
Plaintiffs contend, however, that the court declined to apply the 1992 legislation retroactively in Zachman, 120 Wash.2d 304, 841 P.2d 27. The 1992 legislation was enacted after oral argument in Zachman, but before the decision was filed. In a footnote the court said that the 1992 legislation did not affect its analysis because "we apply the statute previously applicable." Id. at 307 n. 3, 841 P.2d 27. However, the court clearly did not address the issue or arguments like those presented here, and we do not find Zachman controlling.
Plaintiffs also contend that nothing in the 1992 legislation indicates retroactive application was intended. Instead, the Legislature's use of the word "shall" ("[t]he service charge ... shall not exceed the schedule or rate agreed to by contract") indicates prospective application. RCW 63.14.130(2). Under the case law discussed above concerning repealing statutes and repeal of usury laws particularly, express retroactivity language is not required for the legislation to operate retroactively. Further, the use of "shall" indicates a mandatory directive and not prospective application. Finally, Plaintiffs seek to confine Sparkman to its facts. The legal principle in Sparkman applies here, however, because former RCW 63.14.130 was effectively a usury law.
We hold that the 1992 legislation deregulating service charge rates under RISA applies retroactively. This holding disposes of the numerous other issues related to Plaintiffs' claims based upon allegedly excessive service charges.

*824 II.NON-SERVICE-CHARGE VIOLATIONS OF RISA
The trial court held that an affirmative cause of action exists under RISA only for a claim based upon excess service charges. The court held that where any other violation of RISA is concerned, a buyer may assert that violation under RCW 63.14.180 only as a defense in an action brought by the creditor for enforcement of the financing agreement.
RCW 63.14.180 provides:
Any person who enters into a retail installment contract, charge agreement, or lender credit card agreement that does not comply with the provisions of this chapter... except as a result of an accidental or bona fide error shall be barred from the recovery of any service charge, official fees, or any delinquency or collection charge under or in connection with the related retail installment contract or purchases under a retail charge agreement or lender credit card agreement; but such person may nevertheless recover from the buyer an amount equal to the cash price of the goods or services and the cost to such person of any insurance included in the transaction: PROVIDED, That if the service charge is in excess of that allowed by RCW 63.14.130, except as the result of an accidental or bona fide error, the buyer shall be entitled to an amount equal to the total of (1) twice the amount of the service charge paid, and (2) the amount of the service charge contracted for and not paid, plus (3) costs and reasonable attorneys' fees.
RCW 63.14.152 provides that a buyer can bring a declaratory judgment action to establish whether service charges are excessive under RISA. The parties do not dispute that an affirmative cause of action exists for the buyer where excessive service charges are concerned.
RISA also provides that "[t]he attorney general or the prosecuting attorney may bring an action in the name of the state against any person to restrain and prevent any violation of this chapter." RCW 63.14.190. RISA provides for criminal sanctions to be imposed upon "[a]ny person who shall wilfully and intentionally violate" any of its provisions. RCW 63.14.170. Further, civil penalties may be imposed for any violation of any order or injunction entered pursuant to RISA. RCW 63.14.210.
Plaintiffs maintain that the court should recognize a cause of action under RCW 63.14.180 for violations of RISA other than imposition of excess service charges. The first part of the statute provides that "a person" "shall be barred from the recovery of any service charge" if disclosures are inadequate (or another violation occurs other than one based upon excess service charges), while the second part of the statute (following "PROVIDED") states that the "buyer shall be entitled to...." RCW 63.14.180. Because only the creditor would seek any "recovery" of service charges, delinquency fees and the like along with the cost of the goods sold, and in light of the quite different language in the second part of the statute entitling the buyer to certain penalties, the language of the statute expressly provides only for an affirmative cause of action for excess service charges.
Plaintiffs argue, however, that a cause of action for nonservice-charge violations was recognized in Lookebill v. Mom's Mobile Homes, Inc., 16 Wash.App. 817, 559 P.2d 600, review denied, 88 Wash.2d 1017 (1977) and Kenworthy v. Bolin, 17 Wash.App. 650, 564 P.2d 835 (1977). Although the court in those cases seems to have assumed such a cause of action exists, it simply did not address the issue.
Plaintiffs also urge the court to imply an affirmative statutory cause of action under the test stated in Bennett v. Hardy, 113 Wash.2d 912, 784 P.2d 1258 (1990). According to Bennett, when a statute provides a right of recovery, a remedy will be implied depending upon
whether the plaintiff is within the class for whose "especial" benefit the statute was enacted; [2] whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and [3] whether implying a remedy is consistent with the underlying purpose of the legislation.
Id. at 920-21, 784 P.2d 1258.
Initially, GE Capital is correct in its argument that RCW 63.14.180 provides both *825 a right of recovery and a remedy when a creditor seeks to enforce a financing agreement which violates RISA because the buyer can assert nonservice-charge violations as a defense to the creditor's claims. No cause of action should be implied when the Legislature has provided an adequate remedy in the statute. Id. at 920, 784 P.2d 1258.[1]
Aside from the question whether a remedy already exists, the Bennett three-factor test does not support an implied cause of action. RISA prohibits a creditor from engaging in certain practices and mandates certain disclosures, and obviously does so for the benefit of consumers purchasing under financing agreements. Also, an affirmative cause of action would be consistent with the underlying purpose of the legislation. Thus, the first and third factors of the Bennett analysis favor an implied cause of action. However, the second factor of the Bennett analysis, concerning legislative intent, does not.
First, a difference in language indicates a difference in legislative intent. See, e.g., State v. Cronin, 130 Wash.2d 392, 399, 923 P.2d 694 (1996); Seeber v. Washington State Pub. Disclosure Comm'n, 96 Wash.2d 135, 634 P.2d 303 (1981). While the first part of RCW 63.14.180 concerns a creditor's ability to recover service charges, other fees, and the cost of goods where RISA is violated other than by excess service charges, it does not provide for a buyer's recovery under these circumstances. In contrast, the second part of RCW 63.14.180, relating to penalties for excess service charges, expressly entitles a buyer to recovery, and RCW 63.14.152 expressly establishes a buyer's cause of action for a declaratory judgment that service charges are excessive. This difference in language indicates that the Legislature intended a buyer to have a cause of action based upon imposition of excess service charges but not based upon other violations of RISA. Specific language in the first part of the statute reinforces this conclusion. It refers to "any person" and then states that despite violating the act "such person may nevertheless recover from the buyer" the cost of the goods sold. RCW 63.14.180 (emphasis added). This language indicates that "person" is clearly someone other than the buyerthus indicating the Legislature intended to address only what may be recovered in an action by the creditor in the first part of the statute, not recovery by a buyer. The language of the statute demonstrates the Legislature intended the first part of RCW 63.14.180 to serve as a "shield" rather than a "sword."
Second, RCW 63.14.180 was enacted in 1963. Laws of 1963, ch. 236, § 18. Similar consumer protection legislation existing in 1963 did not permit affirmative statutory causes of action. In 1963, buyers had no right to sue for penalties under the state's usury statutes, RCW 19.52, Trautman v. Spokane Sec. Fin. Corp., 163 Wash. 585, 591, 1 P.2d 867 (1931); Goodwin Co. v. National Discount Corp., 5 Wash.2d 521, 528-29, 105 P.2d 805, 135 A.L.R. 801 (1940), and consumers had no right to sue under the Consumer Protection Act, RCW 19.86, Johnston v. Beneficial Management Corp. of Am., 85 Wash.2d 637, 639-0, 538 P.2d 510 (1975). When enacted in 1963, RISA included the section providing that the attorney general or prosecuting attorney could bring an action in the name of the state to restrain and prevent any violation of the act. Laws of 1963, ch. 236, § 19; RCW 63.14.190.
RISA when enacted contained no indication of legislative intent that an affirmative private right of action existed at all. Given the state of similar consumer protection laws existing in 1963, we conclude the Legislature did not intend such a right be implied in RCW 63.14.180. Instead, it intended, that the attorney general or prosecuting attorney could maintain an action in the name Of the state, RCW 63.14.190, and that buyers could assert violations of the act as a defense in an action brought to enforce the financing agreement.
*826 It was not until 1967 that RISA was amended to add an affirmative right to sue to determine whether service charges imposed were excessive. Laws of 1967, ch. 234, § 11; RCW 63.14.152. At the same time RCW 63.14.180 was amended to add the proviso entitling buyers to penalties for excess service charges. Laws of 1967, ch. 234, § 10. Through these amendments the Legislature created a consumer right of action based upon excess service charges, but it did not add such a cause of action based upon any other violations of RISA.
Also in 1967, the Legislature substituted the word "person" which now appears in RCW 63.14.180 for "seller," the word appearing in the statute as originally enacted. Laws of 1967, ch. 234, § 10. Plaintiffs urge that this change expanded the scope of the statute and broadened an already existing private right of action for nonservice-charge violations. As explained, however, the statutory language and history do not support Plaintiffs' claim that a private right of action for nonservice-charge violations of RISA existed. Further, nothing about the change from "seller" to "person" suggests that such a buyer's cause of action was intended. Instead, the change accommodates situations where the creditor seeking to enforce an agreement for a retail installment transaction is not the seller, but may be, for example, an assignee.
In 1984, when lender credit card provisions were added to RISA, RCW 63.14.180 was amended to add reference to lender credit agreements. Laws of 1984, ch. 280, § 12. However, no other changes to RCW 63.14.180 were made at that time. Merely including lender credit card agreements within the purview of RCW 63.14.180 suggests no more than that the Legislature intended that the existing defense contained in the statute be extended to the newly recognized lender credit card agreements. Thus, a violation of RISA involving a lender credit card agreement can be asserted as a defense in an action by the creditor to enforce the agreement.[2]
Legislative history indicates no implied cause of action was intended for nonservice-charge violations of RISA.
We conclude the second part of the Bennett test does not favor implying a cause of action based upon nonservice-charge violations of RISA.
Amicus Curiae Washington State Council of Senior Citizens argues, however, that the second factor of the Bennett analysis is meaningless absent specific indication of intent, and that whether an implied cause of action should be recognized must depend on the first and third factors. Relying on federal cases, Amicus maintains that silence in the statute and the legislative history on the issue of intent, and the availability of other remedies does not establish legislative intent precluding a cause of action. Regardless of the merits of this argument, it does not apply here. Rather than silence, the statutory language in RCW 63.14.180 and the history of consumer protection statutes in Washington affirmatively indicate no cause of action was intended.
Finally, Plaintiffs and Amicus offer a number of reasons why an affirmative cause of action should be implied. They argue that allowing disclosure and other nonservice-charge violations to be raised only as a "shield" will not require creditors to comply with RISA and they can simply continue to collect illegal charges so long as unwary consumers continue to pay;[3] that the self-help remedy of refusing to pay and then asserting the statute as a defense overlooks the creditor's leverage due to the ability to affect the debtor's credit record; that it is logically possible that the set-off for illegal charges would exceed the remaining principal and absent ability to bring suit the debtor cannot obtain a judicial determination he or she has paid the debt in full, the debtor will never be able to obtain clear title, and the creditor's hen on the goods will serve as a means for the creditor to extort illegal payments from the customer; and that there is a great disparity in resources between a financing company and a single consumer.
*827 These policy arguments should be addressed to the Legislature. "We will not imply a private cause of action when the drafters of a statute evidenced a contrary intent; public policy is to be declared by the Legislature, not the courts." Bird-Johnson Corp. v. Dana Corp., 119 Wash.2d 423, 428, 833 P.2d 375 (1992). We note, however, that Plaintiffs' and Amicus' arguments to the effect that absent an implied cause of action creditors will violate RISA with impunity are undercut by RCW 63.14.190, providing for enforcement of RISA by the attorney general and prosecuting attorneys, and RCW 63.14.170 and RCW 63.14.210, providing for criminal and civil penalties.
We hold that aside from claims based upon excess service charges, there is no affirmative cause of action under RCW 63.14.180 for RISA violations, including disclosure violations. This holding effectively disposes of the remainder of the parties' arguments.
We remand this case to the trial court for proceedings consistent with this opinion.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] GE Capital also contends that buyers have a remedy under the federal Truth in Lending Act for failure to comply with federal disclosure laws, 15 U.S.C. § 1640(a), and therefore a remedy exists. As GE Capital acknowledges in connection with another argument, however, some creditors may be bound to follow RISA's disclosure requirements but not the federal requirements in light of the federal definition of "creditor." 12 C.F.R. § 226.2(a)(17) (1997). Thus, a federal remedy may not be available.
[2] Such a violation, including retention of an illegal security interest, see RCW 63.14.125, is of course subject to an action brought by the Attorney General or prosecuting attorney.
[3] As GE Capital points out, an action may be brought under RISA for imposition of excess service charges.