**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RUSSELL CARTER and MEGAN CARTER, and the marital community composed thereof, and on behalf of their minor children, S.C. and E.C. | No. 56686-9-II |
| Appellants, | |
| v. | |
| The STATE of Washington, BY AND THROUGH its various state agencies and subdivisions, including DEPARTMENT OF SOCIAL AND HEALTH SERVICES, and Division of Children and Family Services, and Children's Protective Services, and Children's Welfare Division, | PUBLISHED OPINION |
| Respondent. | |

GLASGOW, C.J.—Megan and Russell Carter[1] have two minor children, SC and EC. Both children were born premature, and both have needed extensive medical care.

Between February 2011 and March 2018, Child Protective Services (CPS) received child abuse and neglect referrals from various medical professionals, and CPS investigated Megan several times, but it closed all the investigations without taking action. In particular, the 2011 investigation of Megan involving her older child, SC, ultimately concluded with a finding that the report of abuse and neglect was unfounded.

In May 2018, while EC was hospitalized, CPS investigated allegations that Megan was withholding medication from EC. As a result, the Department of Children, Youth, and Families

---

[1] To avoid confusion, we refer to Megan Carter and Russell Carter by their first names.

No. 56686-9-II

(the Department)[2] filed a dependency petition. During the dependency trial, the Department disclosed records of the 2011 investigation. The trial court dismissed the 2018 dependency petition and concluded that the Department had violated RCW 26.44.031(2)(b), which requires it to destroy records concerning unfounded CPS investigations within six years of completion of the investigation.

The Carters then sued the Department for failure to destroy records of prior investigations, and they sought damages and injunctive relief under RCW 26.44.031(5)(a). The Department moved for summary judgment, conceding that the Carters were entitled to an order requiring destruction of the 2011 investigation records but arguing that the statute did not allow the Carters to seek monetary relief. The trial court granted the Department's motion.

On appeal, the Carters argue that we should find an implied cause of action for monetary damages under RCW 26.44.031(5)(a). Because the legislature identified available remedies in RCW 26.44.031(5)(a), and those remedies do not include monetary compensation, we decline to find that the legislature intended an implied cause of action for damages. We affirm.

FACTS

I. BACKGROUND

The Carters are a married couple. SC and EC are their minor children. SC was born in 2009 and EC was born in 2013. Both children were born premature and they have had "extensive medical needs starting from birth." Clerk's Papers (CP) at 23.

---

[2] When some of the events leading up to this dispute took place, the Department of Social and Health Services was responsible for administering Washington's child welfare system, but the Department of Children, Youth, and Families became responsible for doing so starting in July 1, 2018.

No. 56686-9-II

In February 2011, CPS investigated allegations that Megan was subjecting SC to medical child abuse. Near the end of the year, CPS ultimately closed the investigation with an unfounded finding. An unfounded finding means "available information indicates that, more likely than not, child abuse or neglect did not occur, or . . . there is insufficient evidence for the [Department] to determine whether the alleged child abuse did or did not occur." RCW 26.44.020(29).[3]

Between October 2013 and January 2018, CPS received several additional referrals regarding Megan's treatment of SC and EC. In each case, CPS either closed the investigation with an unfounded finding or screened out the report. The Department screens out a report when it determines that it "does not rise to the level of a credible report of abuse or neglect" and does not require a follow-up investigation. RCW 26.44.020(25).[4]

In March 2018, CPS investigated Megan after receiving a referral from a hospital social worker. The social worker reported that EC was hospitalized for a number of conditions and that Megan did not have the capacity to care for her. CPS screened in the report as "Risk Only," so it took no further action at that time. CP at 225.

On May 9, 2018, CPS investigated allegations that while EC was hospitalized, Megan was engaging in medical child abuse by withholding anticoagulant medication from EC. CPS later determined that the allegations were founded. Police placed EC in protective custody at the hospital, and the hospital ordered Megan to leave the premises.

---

[3] We cite to the current version of the statute because the definition of an unfounded finding has not changed since the 2011 CPS investigation.

[4] We cite to the current version of the statute because the definition of a screened-out report has not changed since the 2013 CPS investigation.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56686-9-II

## II. DEPENDENCY PETITION AND TRIAL

Two days later, the Department filed a dependency petition for EC, who was then five years old. It requested continued out-of-home placement for EC, as well as the removal of eight-year-old SC from the Carters' home "due to the risk associated with the alleged medical child abuse and his history of exposure to medical child abuse as a toddler." CP at 272. The petition stated that while there were "no allegations of child abuse and neglect directly related to the father at [that] time, the risk to the children [was] too great and the Department [could not] ensure the safety, health[,] and welfare of the children in the care of either parent." CP at 274.

The dependency petition referred to the 2011 CPS investigation involving Megan's treatment of SC. The petition stated that the Department had "reviewed the family's history . . . and learned that [SC] had been . . . involved in a dependency action . . . due to concerns of medical child abuse by the mother." CP at 273. The petition did not state that CPS had ultimately closed the investigation with an unfounded finding about seven years earlier.

In April and May 2019, the trial court held a dependency trial. During the trial, Megan alleged that the Department "had distributed medical and other case records to its witnesses in violation of RCW 26.44.031." CP at 129. The statute requires the Department to "destroy all . . . records concerning" a "screened-out [CPS report] within three years from the receipt of the report." RCW 26.44.031(2)(a). It also requires the Department to destroy all records concerning an "unfounded or inconclusive [CPS report] within six years of completion of the investigation" with certain limited exceptions when a subsequent founded finding is entered about the same child or immediate family member before destruction of the records. RCW 26.44.031(2)(b).

4

No. 56686-9-II

After a 15-day trial and extensive findings, the trial court dismissed the dependency petition as to both Carters. It concluded that the Department did not prove by a preponderance of the evidence that Megan had abused or neglected her children or that Megan was unable to provide them with adequate care. The trial court also found that the Department violated RCW 26.44.031 by maintaining and distributing "the records pertaining to [SC's] prior dependency case." CP at 129.

### III. LAWSUIT

The Carters then sued the Department. They put forth a cause of action for damages based on the Department's violation of its "duty, as set forth in RCW 26.44.031, to destroy/purge" records of screened-out reports within three years of receipt and records of unfounded or inconclusive reports within six years of an investigation's completion. CP at 5 ("First Cause of Action: Failure to Destroy Records" and listing no second cause of action). The Carters also sought injunctive relief, requesting that the trial court order the Department to destroy all records of screened-out reports about them created three or more years before the March 2018 intake; all records of unfounded or inconclusive reports about them created six or more years before the March 2018 intake; and all records from March 2018 or later that refer to records it had failed to destroy in violation of RCW 26.44.031.

The Department moved for summary judgment. Its exhibits included a number of CPS referrals with Megan as the subject. The Department conceded that RCW 26.44.031 required it to destroy records pertaining to the 2011 unfounded finding in 2017, and it requested an order authorizing it to destroy those records. The Department sought court approval because the records were the subject of the pending litigation. However, the Department argued that the trial court

5

No. 56686-9-II

should dismiss the claims for damages because they exceeded "the statutory relief provided by RCW 26.44.031." CP at 297.

In their response to the Department's motion, the Carters argued that "all but one of the records [of alleged abuse or neglect by Megan] submitted with the State's motion should already have been destroyed." CP at 307.

At the hearing on summary judgment, the Department submitted a proposed order covering "all but two" of the records the Carters asked to have destroyed in their response brief. Verbatim Rep. of Proc. (VRP) at 11. The Department requested that the trial court dismiss the claims for damages and order the destruction of records "as specified in the proposed order." *Id.*

At oral argument, the Carters confirmed that they were asking the court to find an implied cause of action for damages under RCW 26.44.031, and they were not relying on any other avenue for relief. The trial court then applied the test for implied causes of action from *Bennett v. Hardy*, 113 Wn.2d 912, 784 P.2d 1258 (1990). It concluded that "there is not an explicit or implicit [legislative] intent to create a remedy or imply a tort cause of action" for damages for a violation of RCW 26.44.031. VRP at 27.

The trial court granted the Department's motion for summary judgment regarding the Carters' claims for damages. It also granted the Department's motion for an order to destroy records, ruling that under RCW 26.44.031(2), the Department needed to destroy its records of the investigations from 2011 through 2018 that were either screened out more than three years ago or closed with unfounded findings more than six years ago.[5]

---

[5] Later that month, the Department moved to amend the order. It explained that the Carters had filed new tort claims and that it had "a legal obligation not to destroy records when such destruction can be considered spoliation of evidence." CP at 367. The trial court amended the order to extend

No. 56686-9-II

The Carters appeal.

ANALYSIS

The Carters contend that the trial court erred by granting the Department's motion for summary judgment regarding their claims for damages. Based on the *Bennett* test, they argue that we should find that the legislature implied a cause of action for monetary damages under RCW 26.44.031(5)(a). The Carters also raised in their reply additional arguments for finding an implied cause of action for monetary damages.

This court reviews a trial court's grant of summary judgment de novo, performing "the same inquiry as the trial court." *McDevitt v. Harborview Med. Ctr.*, 179 Wn.2d 59, 64, 316 P.3d 469 (2013). Summary judgment is proper where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

The parties agree that the facts are undisputed, and the Department has conceded that it violated the statute by failing to timely destroy records of the 2011 investigation of Megan that resulted in an unfounded finding of child abuse or neglect. The Department also conceded that other records of screened-out and unfounded reports should be destroyed. The only issue here— whether RCW 26.44.031(5)(a) gives rise to an implied cause of action for monetary damages—is a question of law.

---

the deadline for the Department to destroy records, adding that the Department "may not disclose these records except as necessary for any matters related to Plaintiffs' tort claims." CP at 373.

7

No. 56686-9-II

## I. HISTORY OF RCW 26.44.031

A.      1997 Adoption

RCW 26.44.031 was first adopted in 1997. At that time, the legislature explained the purpose of the statute and imposed a requirement that information about unfounded referrals be purged after six years unless another report of child abuse or neglect was received:

> To protect the privacy in reporting and the maintenance of reports of nonaccidental injury, neglect, death, sexual abuse, and cruelty to children by their parents, and to safeguard against arbitrary, malicious, or erroneous information or actions, the [Department] shall not maintain information related to unfounded referrals in files or reports of child abuse or neglect for longer than six years except as provided in this section.
> At the end of six years from receipt of the unfounded report, the information shall be purged unless an additional report has been received in the intervening period.

LAWS OF 1997, ch. 282, § 1. At the same time, the legislature defined "unfounded" to mean that "available evidence [indicated] that, more likely than not, child abuse or neglect did not occur." LAWS OF 1997, ch. 282, § 4(21). The 1997 legislation also created a right to prompt notice for the subjects of child abuse or neglect investigations. LAWS OF 1997, ch. 282, § 2(2).

B.      2007 Amendment

The legislature amended RCW 26.44.031 in 2007. It revised the first sentence to state that the Department "shall not *disclose or* maintain information related to reports of child abuse or neglect except as provided in this section or as otherwise required by state and federal law." LAWS OF 2007, ch. 220, § 3(1) (emphasis added). The legislature also added language requiring the Department to destroy all records concerning screened-out reports of child abuse or neglect within three years of receiving the report. *Id.* § 3(2)(a). And it required destruction of all records concerning unfounded or inconclusive reports of child abuse or neglect within six years of

8

No. 56686-9-II

completion of the investigation, absent a later relevant founded report. *Id.* § 3(2)(b). To enforce these requirements, the legislature added subsection (5)(a), which provides that if the Department fails to comply with the statute's requirements, "an individual who is the subject of a report may institute proceedings for injunctive or other appropriate relief for enforcement of the requirement to purge information." *Id.* § 3(5)(a).

Also, in 2007, the legislature added subsection (4) prohibiting disclosure of screened-out and unfounded reports of child abuse or neglect, regardless of their age, to child placement agencies, adoption agencies, and certain licensed providers. *Id.* § 4. Before the legislature added this subsection, its relevant committee heard testimony that keeping "information regarding inconclusive reports of child abuse or neglect is extremely concerning to foster parents," because when "an unfortunate event occurs and is placed on a foster parent's record as inconclusive, the person is black-balled from being a foster parent when he or she [has] not had a chance to defend themselves." S.B. REP. ON S.B. 5321, at 3, 60th Leg., Reg. Sess. (Wash. 2007).

The legislature also added a separate enforcement provision that applies when the Department has violated this specific nondisclosure requirement. In subsection (5)(b), the legislature provided that if the Department "fails to comply with subsection (4) of this section and an individual who is the subject of the report is harmed by the disclosure of information," the court may award injunctive relief, reasonable attorney fees, and a penalty of up to $1,000. LAWS OF 2007, ch. 220, § 3. At the same time, the legislature provided that a "proceeding under this subsection does not preclude other methods of enforcement provided for by law." *Id.* § 3(5)(c).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56686-9-II

C.     2012 Amendment

Finally, in 2012, the legislature amended RCW 26.44.031 for the last time when it passed broader legislation adopting a new alternative to a formal child abuse or neglect investigation called a family assessment response. The legislature added records concerning a person's participation in a family assessment response to the list of records that could not be disclosed in certain circumstances. LAWS OF 2012, ch. 259, § 4. The legislature also amended subsection (4), the nondisclosure provision, creating an exception allowing disclosure of a screened-out report, an unfounded report, or information about a family's participation in a family assessment response to a child placement agency, adoption agency, or licensed provider if the person who is the subject of the report seeks to become a licensed foster parent or adoptive parent or if they are a parent or legal custodian of a child being served by one of those agencies. *Id.* § 4(4)(a)-(b). The only change to subsection (5) regarding enforcement and remedies was to add disclosing information about a family assessment response to (5)(b), the subsection providing for a monetary penalty and attorney fees where the Department violates subsection (4) by improperly disclosing protected information to a child placement agency, adoption agency, or licensed provider. *Id.* § 4(5)(b).

Thus, when the legislature first adopted RCW 26.44.031, the statute expressed a purpose to maintain privacy about child abuse reports and investigations that were screened out or led to unfounded findings, but it contained no express remedy for violation of the statute. In 2007, the legislature added two specific remedies. A person whose child abuse report or investigation was improperly disclosed to a child placement agency, adoption agency, or licensed provider in violation of subsection (4) could obtain a $1,000 fine and attorney fees. RCW 26.44.031(5)(b). And if the Department otherwise failed "to comply with this section," meaning RCW 26.44.031,

10

No. 56686-9-II

a person "who is the subject of a report" could "institute proceedings for injunctive or other appropriate relief for enforcement of the requirement to purge information." RCW 26.44.031(5)(a). Finally, a proceeding under subsection (5) "does not preclude other methods of enforcement provided for by law." RCW 26.44.031(5)(c).

## II. THE *BENNETT* TEST

We use the three-part *Bennett* test to determine whether to find an implied cause of action based on statutory provisions. *Turner v. Dep't of Soc. & Health Servs.*, 198 Wn.2d 273, 298, 493 P.3d 117 (2021). To find an implied cause of action, we consider (1) whether the plaintiff is within the class for whose benefit the legislature enacted the statute, (2) whether legislative intent implicitly or explicitly supports creating a remedy, and (3) whether finding an implied remedy is consistent with the legislation's underlying purpose. *Id.* "If the statute, read in the context of all the legislature has said on the subject, is plain on its face, we will give it that plain meaning." *Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 347, 449 P.3d 1040 (2019). "But if after reading the statute in context, it remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Id.*

### A.    Part One of the *Bennett* Test

Here, part one of the *Bennett* test supports implying a cause of action. The Carters are in the class for whose benefit RCW 26.44.031 was enacted. RCW 26.44.010, the declaration of purpose for Washington's chapter on child abuse, states that reports "of child abuse and neglect shall be maintained and disseminated with strictest regard for the privacy of the subjects of such reports and so as to safeguard against arbitrary, malicious or erroneous information or actions." RCW 26.44.031 itself states that its requirements exist to protect privacy and "to safeguard against

11

No. 56686-9-II

arbitrary, malicious, or erroneous information or actions." Read together, these provisions show that the legislature intended RCW 26.44.031 to benefit the subjects of CPS reports of abuse or neglect.

B.      Part Two of the *Bennett* Test

Part two of the *Bennett* test does not support implying a cause of action, however. Legislative intent, as discerned from the statute's plain language and overall context, as well as the legislative history, does not weigh in favor of creating a remedy.

When applying the second part of the *Bennett* test—whether legislative intent supports creating a remedy—we "'assume that the legislature is aware of the doctrine of implied statutory causes of action.'" *Swank v. Valley Christian Sch.*, 188 Wn.2d 663, 677, 398 P.3d 1108 (2017) (quoting *Bennett*, 113 Wn.2d at 919-20). In prior cases, legislative intent has generally supported creating a remedy where the legislature displayed concern about a distinct harm but provided no mechanism for enforcing the law addressing the issue. *See id.*; *Bennett*, 113 Wn.2d at 921.

For example, in *Bennett*, the Washington Supreme Court held that where a statute made it an unfair employment practice to subject an employee between the ages of 40 and 70 to age-based discrimination but provided "no express method of redress against an employer who has engaged in such an unfair practice, there is an implied right of action for plaintiffs alleging violations of that statute." 113 Wn.2d at 921. And more recently in *Swank*, the Washington Supreme Court held that a statute regulating the way school sports programs address youth athletes' concussions "gives rise to an implied cause of action." 188 Wn.2d at 668. Applying the second part of the *Bennett* test, the court explained that despite the legislature displaying "clear concern" about concussion-

12

No. 56686-9-II

related injuries and deaths, there was "no mechanism in the [statute] to enforce the requirements intended to address the risks of youth athlete concussions." *Id.* at 677.

In contrast, in *Keodalah*, the court declined to find an implied cause of action for insurance bad faith claims in a statute providing that insurers had a duty to preserve "'the integrity of insurance.'" 194 Wn.2d at 345 (quoting RCW 48.01.030). The court found "it significant that the insurance code [contained] several specific enforcement mechanisms," such as provisions giving the insurance commissioner "broad authority to make rules and conduct investigations to give effect to the insurance code." *Id.* at 347. Additionally, in *Cazzanigi v. General Electric Credit Corp.*, the court held that where a statute provided an express cause of action for excess service charges under the Retail Installment Sales of Goods and Services Act, chapter 63.14 RCW, there was no implied cause of action for other violations of the Act. 132 Wn.2d 433, 444-45, 450, 938 P.2d 819 (1997). The court reasoned that the statute allowed a buyer to assert such a violation "as a defense to the creditor's claims," so the legislature "provided an adequate remedy" and no cause of action needed to be implied. *Id.* at 445.

Unlike the statutes at issue in *Bennett* and *Swank*, the statute here has express enforcement mechanisms. Subsection (5) explicitly states that if the Department "fails to comply with this section, an individual who is the subject of a report may institute proceedings for injunctive or other appropriate relief for enforcement of the requirement to purge information." RCW 26.44.031(5)(a).

Moreover, the legislature added RCW 26.44.031(5)(a), the provision allowing injunctive relief or other appropriate relief, at the same time as it added RCW 26.44.031(5)(b), the provision allowing both injunctive relief and a monetary penalty for improper disclosure to child placement

13

No. 56686-9-II

agencies, adoption agencies, and certain licensed providers. LAWS OF 2007, ch. 220, § 3. The fact that the legislature added these subsections together demonstrates that it intentionally reserved the monetary remedy for prospective foster parents, adoptive parents, and employees of licensed providers where the Department improperly disclosed records pertaining to screened-out and unfounded reports of child abuse or neglect. Where the legislature includes particular language in one section of a statute and omits the same language in another section, we can presume that the legislature intended the omission. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 680, 389 P.3d 476 (2017).

Subsection (5)(a) provides for "injunctive *or other appropriate relief.*" RCW 26.44.031(5)(a) (emphasis added). Wherever "a law lists specific things and then refers to them in general, the general statements apply only to the same kind of things that were specifically listed." *Bowie v. Dep't of Revenue*, 171 Wn.2d 1, 12, 248 P.3d 504 (2011). Thus, in this case, the phrase "other appropriate relief" refers to other forms of similar relief, such as writs of mandamus and declaratory judgment actions. If the legislature wanted to make monetary relief more broadly available under subsection (5)(a), it would have done so explicitly, as it did in subsection (5)(b) where it expressly provided a $1,000 penalty. *See Perez-Crisantos*, 187 Wn.2d at 680 (inclusion of language in one section of a statute and omission in another is presumed intentional); *Cazzanigi*, 132 Wn.2d at 445 ("No cause of action should be implied when the [l]egislature has provided an adequate remedy in the statute.").

The Carters argue that a "remedy in one subset of a statute does not preclude implying a remedy for another subset," citing *Kim v. Lakeside Adult Fam. Home*, 185 Wn.2d 532, 374 P.3d 121 (2016). Reply Br. at 16. But *Kim* is similar to *Swank*. In *Kim*, the court held that although the

14

No. 56686-9-II

Abuse of Vulnerable Adults Act, chapter 74.34 RCW, "explicitly includes a cause of action for vulnerable adults who have suffered abuse or neglect" under certain circumstances, finding an implied "cause of action for a mandated reporter's failure to report suspected abuse or neglect is . . . appropriate" because the Act "creates a right to have suspected abuse reported without providing a remedy for a violation of that right." 185 Wn.2d at 546. In other words, the court found an implied cause of action where there was no enforcement mechanism for a particular right. Here, the legislature has specifically provided an enforcement mechanism in the form of injunctive relief, leaving out a fine like the one specified in (5)(b).

Even assuming some ambiguity exists as to whether the legislature intended a cause of action for damages, the legislative history also supports the conclusion that the legislature did not intend to create a remedy in RCW 26.44.031(5)(a) beyond injunctive relief. In 2007, the legislature heard testimony emphasizing a particular problem: situations where the Department's failure to abide by the requirements of the nondisclosure provision prevented people from fostering children. S.B. REP. ON S.B. 5321, 60th Leg., Reg. Sess. (Wash. 2007). It is true that the legislature later amended the statute to allow disclosure to child placement agencies, adoption agencies, and licensed providers when the individual who is the subject of the report seeks to become a licensed foster parent or adoptive parent. But the way the nondisclosure provision came about supports the conclusion that the legislature in 2007 intentionally provided limited monetary compensation of a $1,000 fine for a certain subset of people particularly harmed by violation of the nondisclosure provision.

Finally, although the Carters argue that RCW 26.44.031(5)(c) shows that legislative intent supports implying a cause of action for money damages in RCW 26.44.031(5)(a), subsection (c)

15

No. 56686-9-II

simply ensures that readers do not interpret the statute to limit preexisting remedies. *See Bennett v. Hardy*, 113 Wn.2d at 927 (quoting *Seattle Newspaper-Web Pressmen's Union Loc. 26 v. Seattle*, 24 Wn. App. 462, 467, 604 P.2d 170 (1979)) (examining similar statutory language and finding that it showed "legislative recognition that other means of redress than those in the state Statute should be available"). Here, the Carters expressly relied only on an implied cause of action, not a preexisting standalone common law negligence claim. During the hearing on summary judgment, the Carters stated that they were asking the trial court to find an implied cause of action under RCW 26.44.031, and the trial court confirmed both parties' understanding that the Carters pleaded "only causes of action under [RCW] 26.44.031." VRP at 24.

In sum, neither the text of the remedial provisions in RCW 26.44.031 nor the legislative history supports an implied cause of action for monetary damages.

C.      Part Three of the *Bennett* Test

Part three of the *Bennett* test supports finding an implied cause of action in RCW 26.44.031. Chapter 26.44 RCW has two interrelated purposes: protecting children and protecting the family unit. The declaration of purpose section states that the "bond between a child and his or her parent, custodian, or guardian is of *paramount importance*." RCW 26.44.010 (emphasis added). It also states that the Department must maintain and disseminate reports of child abuse and neglect "with strictest regard for the privacy of the subjects of such reports." *Id.* Here, an implied tort remedy would encourage the Department to uphold its duty to parents, custodians, and guardians by treating screened-out and unfounded reports with greater care.

Nevertheless, part three of the *Bennett* test is not dispositive. While tort liability will always encourage government entities to act more carefully, our "paramount duty in statutory

16

No. 56686-9-II

interpretation is to give effect to the [l]egislature's intent." *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992). Therefore, we cannot imply a cause of action where the legislature did not intend one. As our discussion of part two of the *Bennett* test shows, the legislature made a cause of action for injunctive relief the main enforcement mechanism for RCW 26.44.031, reserving the monetary remedy for prospective foster parents, adoptive parents, and certain licensed providers.

In sum, under *Bennett*, the Washington Supreme Court has tended to find an implied cause of action where the legislature created a right without creating *any* remedy. *Bennett*, 113 Wn.2d at 921; *Swank*, 188 Wn.2d at 677; *Kim*, 185 Wn.2d at 546. But it has not found an implied cause of action for damages where the legislature expressly provided for a different remedy. In such cases, the Supreme Court has recognized that the legislature consciously chose to include some remedies and not others. *Keodalah*, 194 Wn.2d at 347; *Cazzanigi*, 132 Wn.2d at 445. We do not find an implied cause of action for monetary damages under RCW 26.44.031(5)(a) because the legislature consciously chose to omit monetary damages from that section.

### III. OTHER ARGUMENTS SUPPORTING AN IMPLIED CAUSE OF ACTION

In their reply, the Carters develop additional arguments contending that RCW 26.44.031(5)(a) implicitly allows them to seek money damages from the Department.

First, the Carters argue that when the legislature amended RCW 26.44.031(5)(a) in 2007 to allow for injunctive relief, the language "did not create a remedy." Reply Br. at 14. Rather, "it only acknowledged what remedies had already been available for many years," namely a writ of mandamus and a mandatory injunction. *Id.* However, the Carters provide no support for this argument. A writ of mandamus is an extraordinary remedy, and even when a petitioner meets the requirements for obtaining one, they are not automatically entitled to it because a court's

17

No. 56686-9-II

"jurisdiction to issue such a writ is nonexclusive and discretionary." *King County v. Sorensen*, 200 Wn.2d 252, 258, 516 P.3d 388 (2022). And the Carters cite no authority showing that a mandatory injunction requiring the destruction of records was available in this context before the legislature amended the statute in 2007. Where a party cites no authorities supporting its argument, we may assume that counsel searched diligently and found none. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Next, the Carters raise arguments related to an alleged ambiguity in RCW 26.44.031(1). They point out that in 2007, the legislature added the word "disclose" to RCW 26.44.031(1). Reply Br. at 4. Specifically, the legislature changed RCW 26.44.031(1) to say that the Department "shall not *disclose or* maintain information related to reports of child abuse or neglect." LAWS OF 2007, ch. 220, § 3(1) (emphasis added). The Carters contend that the 2007 amendment gave no guidance on addressing the Department's "violation of its general duty not to disclose" or "indicate whether the disclosure that was proscribed was disclosure at any time or only after the Department had wrongly retained records beyond the six-year limit." Reply Br. at 6. They argue that under *Kim*, the absence of any remedy for improper disclosure suggests the legislature intended an implied cause of action. But we need not address a remedy for improper *disclosure* because the Carters' complaint only put forth a cause of action for damages based on the Department's *failure to destroy records*. CP at 5 (including "First Cause of Action: Failure to Destroy Records" but no other cause of action). The complaint did not plead a cause of action for improper disclosure, so we leave this issue for another day.

Additionally, the Carters argue that the legislature's 2012 amendments drastically limited the number of people who could seek monetary relief for the disclosure of unfounded, screened-

18

No. 56686-9-II

out, or inconclusive reports to child placement agencies, private adoption agencies, or licensed providers. They claim that this monetary remedy is now "illusory" and "meaningless." Reply Br. at 12. But the Carters are not seeking relief under RCW 26.44.031(5)(b), so the adequacy of that remedy does not impact this case. More importantly, the legislature's decision to provide broad access to injunctive relief while precisely limiting access to monetary remedies weighs against finding an implied cause of action for money damages because doing so would undermine the legislature's intent to precisely limit monetary relief.

Finally, the Carters argue that the remedy of injunctive relief is insufficient because while an injunction "would at least prevent further dissemination, the harm has already been done." Reply Br. at 15. We do not diminish the harm the Carters have experienced. Still, we cannot graft a new remedy onto the statute where legislative intent does not support it. And as the trial court implied, the Carters are free to pursue forms of relief not tied to the statute, such as a lawsuit for negligent investigation.

No. 56686-9-II

CONCLUSION

We affirm the trial court's grant of summary judgment.

_____
Glasgow, C.J.

We concur:

_____
Lee, J.

_____
Veljacic, J.